[S. F. No. 746.   Department Two.—February 17, 1899.]

G. W. VAN ALLEN et al., Respondents, v. P. B. FRANCIS et al., Appellants.

CONDITIONAL SALE OF PERSONAL PROPERTY—BONA FIDE PURCHASERS.— Conditional sales of personal property are recognized in this state to the fullest extent, and even *bona fide* purchasers from the person to whom property is delivered under an executory contract of conditional sale, get no valid claim to the property. Where the intent is clear that the title shall not pass but remain in the vendor until full payment of the purchase money, or until a mortgage is given therefor, as a condition precedent, a contract agreeing to sell the property, upon such conditions, is one of conditional sale, and the delivery of possession to the purchaser does not change its nature.

ID.—NOTES EVIDENCING PAYMENTS TO BE MADE.—Where notes were given
and received, under a contract of sale expressly declaring that
the payments to be made shall be *evidenced* by the notes, the
idea that the notes themselves constituted payment is expressly
negatived.

ID.—ABSOLUTE PROMISE TO PAY.—The fact that the promise to pay the
purchase money is absolute and not conditional, is but a cir-
cumstance in determining the nature of the contract, but it is
not a determinative characteristic. In many cases where the
promise to pay was absolute, the sale has been held conditional.

ID.—SURRENDER OF NOTES—ACTION AGAINST ASSIGNEE.—The vendor is
not required to surrender the notes given by the original pur-
chaser, in an action to recover the value of the property as
against his assignee and successor in interest, who are not liable
upon the notes.

ID.—ESTOPPEL IN PAIS—VENDOR NOT ESTOPPED.—The vendor is not
bound by any *estoppel in pais* not to assert the contract of con-
ditional sale as against a corporation which received the prop-
erty from the purchaser after default, and paid at maturity
three of the unpaid notes, when the vendor made no misrepre-
sentations or admissions upon which the corporation relied, but
merely received the money paid, as it became due.

ID.—IGNORANCE OF CORPORATION—MEANS OF KNOWLEDGE.—The fact that
the corporation had no actual knowledge that a contract of con-
ditional sale was in existence and only had knowledge that a
portion of the purchase money was unpaid, is immaterial, where
the corporation had full means of knowledge by inquiry, either
from the vendor or from the vendee.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco. Charles W. Slack, Judge.

The facts are stated in the opinion of the court.

Gordon & Young, for Appellant.

Selden S. & George T. Wright, and George C. Sargent, for
Respondents.

HENSHAW, J.—Plaintiff sued defendants in conversion.
The facts were stipulated, and judgment upon them was given
for plaintiffs. Defendants appeal.

Plaintiffs had entered into a contract with one William M.
Langton, the essential terms of which are as follows: "Van Al-
len and Boughton hereby agree to sell at the sum of seventeen
hundred and fifty dollars to William M. Langton" a printing

press. "William M. Langton hereby agrees to buy said press as above specified, and to pay therefor on receipt of press cash three hundred and fifty dollars, and the balance in payments evidenced by seven notes, bearing legal interest, seven per cent, as follows." These promissory notes were each for two hundred dollars, and were payable three, six, nine, twelve, fifteen, eighteen, and twenty-one months respectively after the receipt of the press. "It is also agreed that the deferred payments above mentioned shall be secured by first mortgage on the property herein contracted to be sold. It is further agreed that the title to said property shall remain in the sellers until such mortgage be given, or until the purchase price and interest have been fully paid, and, in case of any default in any of the terms of this contract, the sellers shall have the right to take immediate possession of said property. Upon the execution and delivery of the aforesaid mortgage, or the payment of the purchase price in cash, Van Allen and Boughton agree to execute and deliver a good and sufficient bill of sale of the above-described property." Langton received the press and made the cash payment provided for, and also delivered the notes. On July 9, 1891, Langton was in default. The William M. Langton Printing Company was then organized for the purpose of carrying on the business formerly conducted by Langton. This was a corporation, and shares in it were subscribed and paid for by people who had not been previously connected with Langton in the conduct of the business. Langton transferred and assigned "all his right, title, and interest in and to the property" in question to the corporation. The property was delivered to the corporation, which "had no knowledge nor notice that said contract was in existence in regard to said press and said property, but only had knowledge that it appeared from the books of said William M. Langton that an indebtedness of fourteen hundred dollars was due to Van Allen and Boughton." Van Allen and Boughton had full knowledge and notice of the organization and existence of the corporation to carry on the business formerly conducted by Langton. The corporation paid and discharged the moneys due upon the three promissory notes made by Langton, maturing respectively three, six, and nine months after receipt of the press.

No demand was made by plaintiffs for a mortgage upon the property, as contemplated by the contract. In January, 1892, the corporation assigned and conveyed to Hansbrow all of its property for the benefit of its creditors. Before the commencement of this action Hansbrow assigned, sold, and conveyed the press to defendants. Neither the corporation nor Hansbrow nor the defendants had any knowledge of any claim of the plaintiffs to be the owners of the property.

The nature of the contract between plaintiffs and Langton first invites consideration. By appellants it is insisted that it shows an absolute sale of the property; by respondent, that the contract is one of conditional sale. We think the latter construction is the true one. Conditional sales are recognized in this state to the fullest extent. (*Putnam v. Lamphier,* 36 Cal. 151; *Kohler v. Hayes,* 41 Cal. 455; *Hegler v. Eddy,* 53 Cal. 597; *Seré v. McGovern,* 65 Cal. 244; *Lowe v. Woods,* 100 Cal. 408; 38 Am. St. Rep. 301); and it is well settled that even *bona fide* purchasers from the person to whom personal property is delivered under an executory contract of sale get no valid claim to the property. (*Palmer v. Howard,* 72 Cal. 293; 1 Am. St. Rep. 60.) The rules governing, or at least aiding, the construction of contracts such as this have been succinctly formulated. In Lord Blackburn's treatise two rules are laid down: 1. That where by the agreement the vendor is to do anything to the goods before delivery, it is a condition precedent to the vesting of the property; 2. That where anything remains to be done to the goods for ascertaining the price, such as weighing or testing, this is a condition precedent to the transfer of the property. (Blackburn on Sales, 152.) Benjamin on Sales adds a third rule which is generally recognized: 3. Where the buyer is by contract bound to do anything as a condition either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer. (Benjamin on Sales, par. 320.) The question whether or not a given contract is or is not a contract of conditional sale is to be determined wholly by the intent of the parties, expressed in and deducible from the contract itself. In arriv-

ing at the solution of the question, the whole contract is to be considered, and no detached term or condition is to be given prominence or effect over and above another. So that, if the legal effect of the whole contract be to establish a mortgage or a lease or an option to purchase between the parties, the mere negation in another part of the contract of that legal effect will not control. But if, upon the other hand, the intent be clear that title shall not pass until the performance by the vendee of a condition precedent or concurrent, such a contract becomes a conditional sale and not repugnant to any principle of justice or equity, even though possession of the property be given to the proposing purchaser. (*Harkness v. Russell,* 118 U. S. 663; *Rodgers v. Bachman,* 109 Cal. 552.) Looking at the terms of this agreement either singly or collectively, it is quite clear that one and all contemplate that there shall be no transfer of title to Langton saving upon the performance by him: 1. Either of the condition precedent, the payment of the moneys, or 2. Upon performance of the condition concurrent, the execution of a mortgage. It is not a contract under which Van Allen and Boughton *have sold,* as was the case of *Arkansas Valley etc. Co. v. Mann,* 130 U. S. 69, where the determination that the contract was a sale absolute was rested mainly upon the use of this language, but it is a contract by which Van Allen and Boughton *agree to sell.* Langton agrees to buy and to pay upon receipt of the press three hundred and fifty dollars in cash, and to make other payments at stipulated times. Promissory notes are given. But here the question cannot be said to arise as it arose in *Herryford v. Davis,* 102 U. S. 235, as to whether or not the notes were received in payment of the property, for this contract expressly declares that the payments to be made shall be *evidenced* by the notes, thus negativing the idea that the notes themselves constituted payment. Deferred payments were to be secured by mortgage, a right to the vendor which he could waive, and which he did waive, but in this regard title was to pass only upon the giving of the mortgage, and this Langton never gave. It cannot successfully be argued that the circumstance that Langton was to give a mortgage demonstrates the fact that title to the property must have passed to him, because it is clear from the con-

text that the giving of the mortgage and the passing of the title were interdependent and concurrent. The contract further provides that the title shall remain in the seller until the mortgage be given, or until the purchase price with interest has been fully paid. Unless there be found in the contract some term, clause, or condition nullifying or modifying this clear provision, this language in itself is of controlling force, for it is of the very essence of a contract of conditional sale that the title shall so remain in the seller until compliance with the condition. Again, in case of default the right of recaption is reserved to the seller, but there is no condition for the sale of the property and the payment of any surplus over to the purchaser, a condition which when found is always strongly persuasive that the contract is one of absolute sale with a reserved lien or mortgage back. (*Palmer v. Howard, supra.*) Finally, provision is made for the execution of a bill of sale to the property upon delivery of the mortgage or payment of the purchase price, itself a circumstance indicative of the conditional nature of the transaction. (See *Kohler v. Hayes, supra,* and *Rodgers v. Bachman, supra.*) The significance which appellants seek to attach to the use of the phrase "purchase price" does not, we think, belong to the language. The declaration is that the title to the property "shall remain in the sellers until such mortgage be given, or until the purchase price . . . . has been fully paid." A sale is a contract by which, for a pecuniary consideration, called a price, one transfers to another an interest in property. If there were not in this contract a purchase price, it could not be a sale either absolute or conditional. "Sale is a word of precise legal import. . . . . It means at all times a contract between parties to give and to pass rights of property for money which the buyer pays or promises to pay the seller for the thing bought and sold." (*Williamson v. Berry,* 8 How. 495.)

Nor can appellants' further contention be sustained, namely, that the fact that Langton's promise to pay is absolute is determinative and conclusive that the sale itself was absolute. In *Palmer v. Howard, supra,* a like circumstance is mentioned but not discussed. In *Rodgers v. Bachman, supra,* the same fact is adverted to, but, while such a matter may be a circum-

stance in determining the nature of the contract, it is a circumstance and nothing more. It never has been held to be a determinative characteristic, and it cannot be so held without undoing all the law upon the question. There can be no sale at all without an agreement, express or implied, to pay. Lacking such a promise, the contract is a mere option. (*Hunt v. Wyman*, 100 Mass. 198.) If the circumstance that the purchaser's promise to pay was absolute made the contract an absolute sale, the determination of the nature of such contracts would be so simple a matter as to have rendered entirely superfluous the vast amount of legal reseach and acumen that have been displayed by all the courts of this country and England in construing them. In truth, the purchaser's promise is usually an absolute promise. It was such a promise in *Putnam v. Lamphier, supra; Parke etc. Co. v. White River etc. Co.*, 101 Cal. 37; *Dunn v. Price*, 112 Cal. 46; *Hervey v. Locomotive Works*, 93 U. S. 664; *Harkness v. Russell, supra; Preston v. Whitney*, 23 Mich. 260; *The Marina*, 19 Fed. Rep. 760; *Quinn v. Parke etc. Co.*, 5 Wash. 276. Many other cases could be cited where the promise was absolute, and where the sale was held to be conditional, or, if found to be absolute, the finding was never placed upon the ground that the absolute promise determined the question.

It is urged that plaintiffs may not maintain this action without restoration first made of the unpaid promissory notes still in its possession. If it were debatable whether or not the notes were taken in payment, either absolute or conditional, as was the case in *Segrist v. Crabtree*, 131 U. S. 287, it might well be argued that, as the plaintiffs were not entitled both to the property and to the purchase price of the property, they would be put to their election, and, if they insisted upon recaption of the property, they could only take it after surrender of the notes; or, upon the other hand, as was discussed in *Parke etc. Co. v. White River etc. Co., supra*, if they brought an action to recover upon the notes, or to recover the purchase price of the property, it would be in ratification of the sale, and they would not be allowed to maintain a subsequent action for the recovery of the property itself. In this case the plaintiffs insist upon a recovery of the property. As these defendants are in no way held upon the notes given by Langton, it

cannot matter to them that they are still unpaid in the possession of plaintiffs. Had the plaintiffs sought to take the property while in the possession of Langton, he could have been heard to insist that they must first deliver to him his promissory notes, but with Langton's rights in this regard defendants have nothing to do, after a determination that the notes were neither given nor received in payment of the purchase price.

The further contention of appellants that plaintiffs are estopped by their conduct from asserting their rights under the contract cannot be upheld. The facts upon which appellants rely in support of this estoppel *in pais* are disclosed by the stipulation. They amount to no more than this, that Langton was in default under his contract of conditional sale; that a corporation was organized for the conduct of Langton's business, and that to this corporation Langton conveyed his title and interest in the printing press conditionally sold to him. The corporation had no knowledge nor notice that the contract was in existence, but merely had knowledge that it appeared from the books of Langton that an indebtedness of fourteen hundred dollars was due to the plaintiffs. The plaintiffs had knowledge of the organization and existence of the corporation for the purpose of conducting the business which had formerly been Langton's. The corporation paid to the plaintiffs three of the Langton notes as they matured. Plaintiffs were guilty of no affirmative acts of misrepresentation, nor of any negative acts of concealment. They did nothing but receive the moneys from the corporation as those moneys became due. It is not to be supposed that Langton misrepresented to or concealed from the corporation the true condition of his business; but, even if he did so, it is still less to be supposed that the plaintiffs were parties to the deception. They had the unquestioned right to suppose that the corporation took from Langton with full knowledge of the contract, and the subsequent payment by the corporation to them could have served only to strengthen that belief. The case, then, lacks several of the essential elements necessary to the proof of an estoppel *in pais*. Plaintiffs made no admissions with intent to deceive, or with such carelessness as to amount to constructive

fraud. The corporation, even if destitute of knowledge of the true state of its title, was certainly not destitute of the means of acquiring such knowledge, for it could have learned the facts by inquiry either from Langton or the plaintiffs. Still more, it is not shown that the corporation relied directly upon any declarations or admissions of these plaintiffs. The asserted estoppel in all of these particulars comes far short of the oft-affirmed requirements of *Boggs v. Merced Min. Co.*, 14 Cal. 279.

The judgment appealed from is affirmed.

McFarland, J., and Temple, J., concurred.