(May 14, 1912.)

# PERCIVAL S. PEASE, Appellant, v. TELLER CORPORA-TION, LIMITED, a Corporation, Respondent.

[128 Pac. 981.]

CONDITIONAL SALE CONTRACT—TITLE OF PROPERTY—PAYMENT—WAIVER —DUTY OF COURT IN RENDERING JUDGMENT.

(Syllabus by the court.)

1. A contract signed by the seller and purchaser of a printing-press, in which it is provided that the purchaser will pay for the same in instalments at fixed dates, and such payments are evidenced by promissory notes, and in which contract it is also agreed that should default be made in payment of any of the rent at the times or in the amounts, the seller has the right to retake the property, and that all money paid is to be retained, and that the title to the property sold does not pass until the entire payment has been made, is a conditional sale wherein the title of the property is reserved in the seller until final payment is made.

2. In a conditional sale contract, where title is reserved in the seller until payment is made by the purchaser, the sale can only be completed and title passed upon payment of the purchase price of said property.

3. Where a conditional sale contract provides that the purchase price is to be made in instalments at certain dates, and the purchase price is not paid at the times stated in the contract, and the contract provides that the seller may retake the property, the seller has two remedies: First, the collection of the remainder of the purchase price; second, the retaking of the property; but the seller cannot resort to both remedies.

4. Under a conditional sale contract, where payments are to be made in instalments at certain dates and the title to the property is reserved in the seller until such payments are made, and all the payments are made except the last payment, which is a small proportion of the entire purchase price, and upon default in such payment the seller makes no effort to retake the property for a period of six months, and no steps are taken to collect the purchase price, and the facts show no intention to rescind the contract or declare a forfeiture because of nonpayment, and thereafter attempts are made to collect by demand the balance of the purchase price, and the seller then demands possession of the property, and the purchaser tenders the amount due on the purchase price with interest, the seller cannot maintain an action in replevin against the pur-

chaser where such tender is made good by depositing the same in the court where said action is pending for the use and benefit of the seller.

5. Where the entire facts are presented to the court in an action to enforce the specific performance of a contract, the rights of the parties to the contract should not be adjudged upon technical or narrow questions or considerations so as to do injustice to the parties to the contract, but the court should give full consideration to all the facts and the intention and action of the parties, and give such judgment as will be just and equitable to the parties thereto.

APPEAL from the District Court of the Second Judicial District for Nez Perce County.   Hon. Edgar C. Steele, Judge.

Action in replevin to recover the possession of personal property.   Judgment for defendant.   *Affirmed.*

Eugene O'Neill, for Appellant.

Under conditional sale agreements that title shall not pass until full payment provided by the contract, title does not pass until such payment.   (*Barton v. Groseclose,* 11 Ida. 227, 81 Pac. 623; *Kester v. Schuldt,* 11 Ida. 663, 85 Pac. 974; *Mark Means Tsf. Co. v. McKinzie,* 9 Ida. 165, 73 Pac. 135; *Parke etc. Co. v. White River Lumber Co.,* 101 Cal. 37, 35 Pac. 442; *Studebaker Bros. v. Mau,* 13 Wyo. 358, 110 Am. St. 1001, 80 Pac. 151; *Harkness v. Russell,* 118 U. S. 663, 7 Sup. Ct. 51, 30 L. ed. 287.)

"Courts of equity have not the power to make contracts for parties, nor to alter those which the parties have deliberately made . . . . and when it also appears that the purchaser is without excuse for his delay, the courts will not relieve him from the consequences of his default."   (*Grey v. Tubbs,* 43 Cal. 359; *Martin v. Morgan,* 87 Cal. 203, 22 Am. St. 240, 25 Pac. 350; *Grigg v. Landis,* 4 C. E. Green (19 N. J. Eq.), 350.)

Plaintiff had but one remedy under the terms of this conditional sale contract.   He has sued upon the contract in claim and delivery, and having elected, if election he had, has excluded all rights to sue upon the note.   (*Parke etc. Co. v.*

*White River Lbr. Co.,* 101 Cal. 41, 35 Pac. 442; *Bailey v. Hervey,* 135 Mass. 174.)

The action in claim and delivery showed the court the nature of the action, and if there was an election, plaintiff had elected, and it was not the province of the court to prevent such election, and if made, could not take away the right by finding contrary thereto. (*Matteson v. Equitable Min. & Mill Co.,* 143 Cal. 436, 77 Pac. 144; *Holt Mfg. Co. v. Ewing,* 109 Cal. 353, 42 Pac. 435.)

Fred E. Butler, for Respondent.

An instrument in form a lease, where the amount to be paid as rent is the purchase price of the article, is a conditional sale. (35 Cyc. 656, and cases cited, and 34 Cyc. 1342.)

Where goods have been sold reserving the title as security for the purchase money, a large portion of which has been paid, without demand, a tender on demand of the amount remaining due is sufficient to retain in vendee the right of possession. (*O'Rourke v. Hadcock,* 114 N. Y. 541, 22 N. E. 33; *Taylor v. Finley,* 48 Vt. 78; *New Home Sewing Machine Co. v. Bothane,* 70 Mich. 443, 38 N. W. 326; *People's Furniture Co. v. Crosby,* 57 Neb. 282, 73 Am. St. 504, 77 N. W. 658.)

STEWART, C. J.—This action was brought in the district court of Nez Perce county by appellant to recover from the defendant certain personal property consisting of a printing-press complete, and the action is founded upon the following contract:

## "PACIFIC PRINTERS SUPPLY COMPANY.

### "317 Second Avenue South, Seattle, Wash.

#### "CONDITIONAL SALE AGREEMENT.

"THIS AGREEMENT, made and entered into this 22d day of April, 1909, by and between Pacific Printers Supply Company (a corporation) of Seattle, Washington, the party of the first part, and Teller Corporation, Limited, of Lewiston, Nez Perce County, Idaho, the party of the second part,

"Witnesseth, that in consideration of the covenants, promises and agreements hereinafter contained on the part of the party of the second part, to be by it kept and performed, said party of the first part does hereby lease and let unto said party of the second part the following described personal property, to-wit:

"One No. 8 Babcock Dispatch Printing Press Complete Rebuilt, Factory No. 1206, which is now situate at Lewiston, Nez Perce County in Idaho and the said party of the second part hereby acknowledges the receipt and possession of the whole of said personal property, at said place and covenants, promises and agrees to and with said party of the first part, as follows, to-wit:

"That it will pay to the said party of the first part, its successors or assigns, for the said use of property, the sum of Twenty-three hundred Eighty-eight and no/100 dollars, and interest, as follows: [Then follows a description of the notes.] With interest on said amount from the date of maturity of notes covered by this agreement until paid, at the rate of 8 per cent per annum, said payments to be evidenced by interest-bearing promissory notes, made by the party of the second part; that it will safely keep and carefully use the said property, and not sell or attempt to sell, remove or attempt to remove the same, or any part thereof, from the place where the same is now situate, as hereinbefore set forth; that it will pay all taxes on said property during the time it is in possession of the same; that it will pay the premium on a policy, or policies, of insurance to be taken out by the said party of the first part, on said property covering the time said property shall be in possession of the party of the second part, in a sum not less than Twelve Hundred Dollars; such premium to be paid upon the delivery to the said party of the first part of such policy; that at the expiration of the term herein granted it will deliver the whole of said property to the said party of the first part, f. o. b., Seattle, Washington,

in as good condition as the same now is, or may hereafter be put into, wear from reasonable use thereof excepted; that should default be made in the payment of any of the rent at the times or in the amounts, as hereinbefore provided or should the party of the second part violate or fail to keep any of the promises or agreements herein contained, on its part to be observed or kept, then in such event the said party of the first part, its agents or assigns, may at any time thereafter enter upon any premises where said above described property, or any part thereof, may be and take possession and remove the same without let or hindrance from the party of the second part, and it being expressly understood and agreed that any and all money paid, or property delivered, under and by virtue of this agreement is paid or delivered, for the use of said property and is the sole property of, and to be retained by, the said party of the first part on account of such use.

"The said party of the first part agrees and binds itself that upon the payment to it by the party of the second part of said sum of Twenty-three Hundred Eighty-eight Dollars, with interest as aforesaid, at the times and in the amounts, as aforesaid, it will execute and deliver to the party of the second part a good and sufficient bill of sale of said property, conveying title to said party of the second part.

"It is mutually expressly understood and agreed by and between the parties hereto that time is of the essence of this agreement, and of the making of the payments herein provided for, that the title to said above described property, or any part thereof does not pass from, but remains in the said party of the first part until the whole of said sum of Twenty-three Hundred Eighty-eight Dollars, with interest, has been paid as herein provided; that the making of the promissory notes herein provided for, or the acceptance of the same by the said party of the first part, shall in no manner whatsoever be held or considered as payment or to pass title to said property.

"In witness whereof, the parties hereto have hereunto set their hands the day and year in this agreement first above written.

"PACIFIC PRINTERS SUPPLY CO.

"Per F. H. BOYNTON, Mgr.

"By W. L. LYNN,

"Attorney in Fact.

"TELLER CORPORATION, LIMITED.

"By HARRY H. BOCKIUS,

"Vice-President.

"HENRY S. GRAY,

"Secretary.

"[Teller Corporation Ltd. Corporate Seal, Lewiston, Idaho.]"

It is alleged in the complaint that before the completion of said payments provided for in said agreement, and months after the said defendant had failed, neglected and refused to make the last of said payments overdue and had failed to deliver said property at Seattle, Washington, the said Pacific Printers Supply Company sold to the American Type Founders Company said printing-press, and assigned and transferred and delivered to it said agreement.

It is also alleged that on the 16th day of November, 1911, the American Type Founders Company demanded possession of said property, at the place of business of the defendant, and then of the value of $1,500, and the defendant refused to deliver said property to the American Type Founders Company; that on the same day, and subsequent to such demand, said contract was assigned to the plaintiff, and all right, title and interest in and to said property; that the defendant unlawfully withholds and detains the said property, and special damages are alleged in the value of $50 for loss of use, and judgment is demanded for recovery of said property or its value in the sum of $1,500.

The answer of the defendant denies that the Pacific Printers Supply Company leased to the defendant the printing-press mentioned in plaintiff's complaint, or that the defendant agreed to pay the Pacific Printers Supply Company the sum

of $2,388 in instalments for the use of said property, or that at the expiration of the term granted, or at any other time or at all, the defendant would deliver the said property or any part thereof to the Pacific Printers Supply Company at Seattle, or elsewhere, or agreed that should default be made in the payment of rent at the times and in the amounts as provided, or should the defendant violate or fail to keep any of the promises or agreements, that the Pacific Printers Supply Company might take possession of and remove the same, or that the title would not pass until the full amount had been paid. The assignments are denied, and also the plaintiff's ownership of said property, and also that the defendant unlawfully withholds said property, or that there are any damages.

The defendant also sets up as a special defense that the contract set forth in plaintiff's complaint was made between J. M. Keatinge, for the Teller Corporation, and the Pacific Printers Supply Company, and that the defendant has paid the sums specified in said conditional contract with the exception of the sum of $50, which became due May 10, 1911; that the promissory note mentioned in the contract for the sum of $50 claimed to be due on the 10th day of May, 1911, was placed in the hands of Finis Bentley for collection, and that Bentley was advised by the defendant that the defendant intended to and would pay such note as soon as it conveniently could do so; that said Bentley at no time made demand for the possession of the printing-press, and the said Pacific Printers Supply Company waived its right to declare a forfeiture under the terms of the contract, and no demand was ever made by the Pacific Printers Supply Company, or anyone for or on behalf of the same, to declare a forfeiture of the rights of the defendant. That on the 13th day of November, 1911, the defendant was also indebted to the American Type Founders Company in approximately the sum of $800, and that after the assignment alleged in the complaint of the contract of sale, such claim was placed in the hands of Eugene O'Neill, attorney for plaintiff, for collection, and that on the 16th day of November, 1911, Joseph M. Keatinge tendered to the said

Eugene O'Neill, in his office during business hours, as attorney for American Type Founders Company, the sum of $52.07, and offered to pay the same to said O'Neill as attorney for said American Type Founders Company, and said O'Neill was requested to accept it and deliver up the promissory note claimed to be due on the 10th day of May, 1911, and said O'Neill then and there refused to accept such sum unless the full claim, approximating the sum of $800, due the American Type Founders Company was also paid; that the defendant was able, willing and ready to pay the sum of money in the amount of $52.07 due at the time of said tender, and at the time of filing the answer delivered to J. R. Lydon, clerk of the above-entitled court, the sum of $52.07 as a tender to plaintiff on said promissory note.

A second defense is also alleged in which it is alleged that the contract sued upon was an absolute sale of the property described therein, and that at the time the promissory note for the sum of $50 became due the Pacific Printers Supply Company waived all rights claimed by it to the retaking of the possession of said printing-press and demanded payment of said note, and by reason of said waiver should be estopped from claiming any interest or title to the property in dispute.

Upon the issues presented by the pleadings a trial was had to the court, and findings of fact and conclusions of law were made and judgment rendered in favor of respondent. The findings of fact are in accord with the allegations plead by the respondent in his separate defenses.

There is some discussion indulged in by counsel as to whether the instrument set forth in the complaint is an absolute sale or whether it is a conditional sale of said property, or whether it is a lease of said property. While there is some conflict in the authorities in construing a contract containing the promises and agreements contained in the contract involved, this court is not inclined to depart from the rule laid down by this court in the following Idaho cases: *Mark Means Transfer Co. v. McKenzie,* 9 Ida. 165, 73 Pac. 135; *Barton v. Groseclose,* 11 Ida. 228, 81 Pac. 623; *Kester v. Schuldt,* 11 Ida. 663, 85 Pac. 974; *Peasley v. Noble,* 17 Ida. 686, 134 Am.

St. 270, 107 Pac. 402, 27 L. R. A., N. S., 216. In addition to the cases above cited we also refer to the case of *Van Allen v. Francis*, 123 Cal. 474, 56 Pac. 339. In this latter case a contract, almost identical with the one involved in its various provisions and requirements, is reviewed and discussed by the supreme court and many cases are cited. (See, also, Williston on Sales, secs. 336, 579.)

In this contract the seller reserves the title to the property until payment is made by the purchaser, when the title passes from the seller to the purchaser and the contract of sale is completed; but until such payment is made, the contract is conditional, and there is no sale of the property but only an agreement for sale. The sale can only be completed by payment or by an election to collect the purchase price. Where there is a retaking under the contract, the seller of the property loses the right to compel payment of the balance of the purchase price. (*Parke v. White R. L. Co.*, 101 Cal. 37, 35 Pac. 442; *Rayfield v. Van Meter*, 120 Cal. 416, 52 Pac. 666; Williston on Sales, sec. 571.)

The contract in terms makes time the essence of the agreement, and provides that upon default of any of the terms of the contract the seller, Pacific Printers Supply Company, its agents or assigns, are authorized to take possession of the property wherever it may be found without let or hindrance from the defendant. The evidence clearly shows that the last payment specified in the contract, to wit, the payment of $50 on the 10th day of May, 1911, was not made when due or at the time this action was commenced, and the court makes a finding in accordance with such evidence. The proof being conclusive, and the court having made a finding accordingly, there can be no question under the rule announced in the cases heretofore referred to that the title to the property never passed from the assignors of the appellant to the respondent, prior to the time this action was commenced.

The title, therefore, of the property described in the contract remained in the seller after the maturity of the note of May 10, 1911, to the same extent as before said date and continued thereafter, and the right of possession to said property

upon the failure to make the payment of the note on May 10, 1911, became absolute in the assignor of the appellant, and the assignor of the appellant was given the power and authority under the provisions of said contract to enter upon any premises where said property might be and take possession and remove the same without let or hindrance from the respondent, and all money paid was for the use of said property. Under this contract it was within the legal right of the appellant and his assignors to reclaim the property described in the contract upon the failure of the respondent to make the payment on May 10, 1911, or an action could be brought for the unpaid purchase price represented by such promissory note. (Williston on Sales, sec. 579, and authorities cited.)

The principles announced in the cases heretofore cited state the correct rule governing contracts of the kind involved in this case, and should be strictly adhered to in construing such contracts. This rule, however, should not be extended so as to defeat the rights of a purchaser under such contracts, who in an action based upon such contract files an answer setting up facts showing an equitable defense, such as a waiver of the conditions of forfeiture and payment, and other acts which show an election to collect the purchase price rather than the retaking of the property as provided in the contract.

The evidence shows that upon the maturity of the last payment the appellant or his assignors did not tender the respondent a bill of sale of the property as provided in the contract, or demand the property or the payment of the note. There is no evidence showing the intention of appellant or his assignors to declare a forfeiture of payments made. Notice was not given to respondent that the contract was terminated and a forfeiture declared by the appellant or his assignors. It was a period of about six months after the maturity of the note before the appellant or his assignors took any steps to enforce the appellant's rights under said contract and at that time demand was made for the payment of the note, and later, when a demand was made for the property, the evidence shows that the contract had been assigned by the Pacific Printers Supply Company to the American Type

Founders Company, who also had a claim against the respondent for the sum of $800, and that the attorney holding the note for collection demanded not only payment of the note, but also the payment of the claim of the American Type Founders Company, and upon such payment not being made, this action was commenced.

Mechem on Sales, vol. 1, sec. 609, declares the general rule in such cases to be as follows: "The law has no interests of its own to subserve in insisting upon forfeitures or the other results of default. The remedies it gives are for the benefit of the vendor, and he may waive them if he will. He may do this, moreover, either expressly or by implication, and as the results of default more often work hardship to the buyer than to the seller, the law looks with complaisance at least upon those acts of the vendor which may fairly be construed as indicative of his intention not to insist upon a forfeiture of the buyer's rights. If, therefore, the seller, notwithstanding the default, does not avail himself of his appropriate remedy, but so acts as to reasonably warrant the inference that he regards the buyer's rights as still subsisting, he will be deemed to have waived the default and he will not be at liberty to declare a forfeiture until he has in some way put the buyer, whom he has thus misled, in the attitude of a fresh default."

Applying this rule to the facts of this case, we find that the contract provides: "The said party of the first part agrees and binds itself that upon the payment to it by the party of the second part of said sum of Twenty-three Hundred Eighty-eight dollars, with interest as aforesaid, at the times and in the amounts, as aforesaid, it will execute and deliver to the party of the second part a good and sufficient bill of sale of said property, conveying title to said party of the second part." There is no allegation in the complaint and there is no evidence tending to show that the plaintiff or his assignors ever offered or tendered a bill of sale of said property at the time payment was due or at the time payment was demanded after the maturity of said note, or that plaintiff or his assignors ever at any time offered to perform this part

of the contract or were able or willing to perform such provision, and such failure may be considered as a circumstance in determining the question as to whether the appellant and his assignors intended to insist upon a forfeiture of the respondent's rights under said contract.

Evidence of the intention of the seller not to rescind the contract because of default of payment, and that the time for payment was waived, is shown by the acts of the seller, in that for six months after the payment was due, the seller pursued the purchaser and attempted to collect the balance of the amount due upon said note. On the same day plaintiff made demand for the possession of the property, to wit, November 16, 1911, and before this action was commenced the respondent tendered to the appellant the amount due upon said note with interest. As further evidence of the necessity for a demand for the possession of the property, and notice of rescission, is a provision of the contract as follows: "With interest on said amount from the date of maturity of notes covered by this agreement until paid, at the rate of eight per cent per annum, said payments to be evidenced by interest-bearing promissory notes, made by the party of the second part." This provision in itself indicates that the time fixed in the contract and specified in the notes for the payment of the several sums might be extended and interest charged at the rate of eight per cent from date of *maturity of said notes.*

It appears from the facts of this case that it was not the intention of the appellant or his assignors on the 10th day of May, 1911, to rescind the contract of sale and declare a forfeiture of the provisions of the contract by reason of the failure of the respondent to make payment on that date. The failure to retake the property on that date, and no effort being made to collect the purchase price at that time, and the extension of time being extended for a period of about six months, we think entitled the respondent to notice on the part of the appellant or his assignors of the election of remedy the appellant or his assignors intended to pursue. The seller under such a contract cannot mislead a purchaser by an effort on his part to pursue both remedies; he must either accept one or the other; and where, as in this instance, the entire

purchase price has been paid except a small per cent, and such balance is tendered before action is commenced, and such tender is paid into court for the benefit of the seller, the seller should be precluded from a retaking of the property under said contract.

In determining this question the trial court evidently realized the duty and power of the court to apply rules of equity properly applicable to a case where the plaintiff is seeking to enforce the specific performance of a contract, and this court is of the opinion that such rule should be applied to determine questions of fact such as are involved in this case. Where the entire facts are presented to the court in an action to enforce the specific performance of a contract, the rights of the parties to the contract should not be adjudged upon technical or narrow questions or considerations so as to do injustice to the parties to the contract, but the court should give full consideration to all the facts and the intention and action of the parties, and give such judgment as will be just and equitable to the parties affected.

We have thoroughly examined the evidence in this case and the court's findings and judgment and discover no error in the record. We think that justice has been done. Judgment is *affirmed*. Costs awarded in favor of respondent.

Sullivan, J., concurs.

Ailshie, J., concurs in the conclusion reached.

Petition for rehearing granted.

### ON REHEARING.

(January 4, 1913.)

PER CURIAM.—A petition for rehearing having been filed in this case, and the same having been granted, the cause was reargued upon rehearing. After this argument the court went over the case and made a thorough examination of the same, and are satisfied that the former opinion in this case was correct. For that reason we reaffirm the original opinion filed in this case.