[Civ. No. 1155.   Third Appellate District.—February 16, 1914.]

## JOHN T. GREENE, Appellant, v. D. W. CARMICHAEL, Respondent.

SALE—EXECUTORY CONTRACT—MORTGAGE OF PROPERTY BY BUYER—EFFECT ON RIGHTS OF SELLER.—The mortgage of an automobile by the purchaser of the machine, who is in possession under an executory contract of sale, does not affect or derogate in any manner from the seller's ownership, in the absence of any element of estoppel.

ID.—CONDITIONAL SALE—CREATION OF LIEN BY BUYER.—Conditional sales are fully recognized in this state, and it is well established that one in possession under such a contract cannot by attempting to sell or create a lien upon the property, impair the rights or interest of the owner.

ID.—OWNERSHIP—POSSESSION OF PROPERTY AS EVIDENCE—DIVESTITURE OF TITLE.—Possession of personal property is only *prima facie* evidence of ownership, and never prevails against the true owner, except with reference to negotiable instruments and whatever comes under the general denomination of currency. This is in accordance with the rule that no one can be divested of his property without his consent, nor can any one transfer a better title than he has himself.

APPEAL from a judgment of the Superior Court of Sacramento County.   C. N. Post, Judge.

The facts are stated in the opinion of the court.

Grove L. Johnson, and Albert D. Smith, for Appellant.

R. L. Shinn, for Respondent.

BURNETT, J.—The appeal is from a judgment in favor of defendant in an action brought to recover the value of a certain automobile alleged to have been converted by defendant to his own use and on which appellant had a chattel mortgage to secure the payment of a promissory note for two hundred and fifty dollars with interest at the rate of five per cent per month. This note and mortgage were executed by one Sidney A. Root while he had possession of said machine. Issue was joined on the question of Root's ownership and respondent's right to convert the machine to his own use. The

court found that Root was not the owner of the automobile at the time of the execution of the mortgage nor at any other time, but that he was in possession thereof under an executory contract of sale, conditioned on the payment to D. W. Carmichael, the respondent herein, of the sum of fourteen hundred dollars, on which payment Root was to become the owner, and not otherwise, and that "no part of said fourteen hundred dollars has ever been paid to said defendant." The conclusion was that defendant had the full right to take and dispose of the property, and this presents the real question involved on the appeal.

There is no doubt that the finding of the court as to the conditional sale is fully sustained by the evidence. Mr. Carmichael testified: "He wanted me to get him an automobile and I secured an automobile with the understanding he was to go to work on Carmichael Colony and to work hard, and he made those promises, which prompted me in securing an automobile for him to use in his work. First, I was to put up so much cash for the automobile, which I objected to doing. He came back to me with another proposition that he had a party that would let him have an automobile, as I understood it, had an automobile to trade—if I would give him a certain lot that I had on the corner of 24th and T Street, to trade for the automobile. That was the transaction, that was agreed upon. Then when he went to get the automobile he came in, he asked me, how I wanted that automobile, where I wanted it; he said he could keep it at his home. . . . All these things I agreed to do. . . . It was to be paid for by the commissions that he would make; he would pay for it from month to month along, everything he could make he would turn right in, paying for the automobile until it was finally paid for. . . . I was buying the machine. The machine was to be mine. That was the general understanding and was agreed to at that time. Mr. Root asked me how the bill of sale was to be made. 'Carmichael Company' or 'D. W. Carmichael.,' I told him, 'Make the bill of sale in my name.' " It is not denied that through the transfer of said lot the purchase price of the machine was paid by defendant. It also appears that respondent paid Charles M. King, a garage owner, $369 on account of material and repairs for said machine. This was after King had ad-

vertised a sale, to satisfy his claim, of the automobile, which had been left at his garage. It is not claimed that Carmichael has been paid any portion of the fourteen hundred dollars. The statement of the foregoing without comment is sufficient to disclose the legal justification for the finding of the lower court that respondent was at all times the owner of the machine and that Root had possession of it under an executory contract of sale.

It is just as irrefutable that there is warranted the conclusion that the action of Root in mortgaging the machine did not affect nor derogate in any manner from defendant's ownership.

Conditional sales are fully recognized in this state and it is well established that one in possession under such contract by attempting to sell or create a lien upon the property cannot impair the rights or interest of the owner. The same principle applies as in the case of stolen property. No one familiar with our law would contend that a thief, by selling, mortgaging, or pawning stolen goods, could prevent or hinder the owner from reclaiming his property wherever he might find it. Of course, on principles of good conscience, if the owner misled an innocent party to his prejudice the former might be precluded from asserting ownership, but as we shall see, that is not the case here.

In *Wright* v. *Solomon,* 19 Cal. 64, [79 Am. Dec. 196], the question is reviewed at length by the court through Chief Justice Field and it is said: "Possession of personal property is only *prima facie* evidence of ownership, and never prevails against the true owner, except with reference to negotiable instruments, and whatever comes under the general denomination of currency. . . . The principle that no one can be divested of his property without his consent, and the maxim that no one can transfer a better title than he has himself, control all questions arising as to property of which a transfer is attempted, with the exceptions stated." The earlier decisions of the supreme court to the contrary were referred to and overruled. In the Wright case, the goods had been consigned to the factor for sale and he pledged them as security for a loan of two thousand dollars and it was held that this would not prevail against the owner and that it made no difference "whether the party taking the pledge

was ignorant as to the extent of the. factor's authority, or that the factor was not the real owner of the property."

In *Putnam* v. *Lamphier,* 36 Cal. 158, it is said: "It is a general rule, applicable to conditional as well as absolute sales, that a second vendee is not entitled to stand in any better situation than his vendor in regard to the title of personal property, other than negotiable instruments, and whatever comes under the general denomination of currency."

In *Vermont Marble Co.* .v. *Brow,* 109 Cal. 241, [50 Am. St. Rep. 37, 41 Pac. 1031], it is declared: "The common law right of seller by appropriate contract to retain the title until performance of some valid condition on the part of the buyer has been long recognized in this state as almost universally elsewhere."

In *Rodgers* v. *Bachman,* 109 Cal. 552, [42 Pac. 448], it is held, as stated in the syllabus: "The owner of property may include in any executory agreement for its sale, any conditions which he may desire to insert, and make their performance essential before he is to be deprived of his ownership; and he may sell his property upon the condition that the title shall not be divested until the price has been fully paid." It is further held that, in the absence of fraud, this is as valid against a third person as the parties to the transaction and that the bailee of personal property cannot convey the title or subject it to execution for his own debts until the condition on which the agreement to sell was made has been performed. The familiar principle is also therein announced that the question whether the sale is conditional is one of intention and that it is the duty of the court to carry out the intention of the parties when ascertained.

The question is again fully discussed in *Van Allen* v. *Francis,* 123 Cal. 474, [56 Pac. 339], and it is therein declared: "Conditional sales are recognized in this state to the fullest extent" (citing cases); "and it is well settled that even *bona fide* purchasers from the person to whom personal property is delivered under an executory contract of sale get no valid claim to the property. (*Palmer* v. *Howard,* 72 Cal. 293," [1 Am. St. Rep. 60,. 13 Pac. 858].)

In the Palmer case, *Kohler* v. *Hayes,* 41 Cal. 455, and *Hegler* v. *Eddy,* 53 Cal. 598, are cited as authority and they declare the same doctrine.

Of course, it can make no kind of difference in the application of the principle that the original purchase of the automobile was made by Root and possession taken by him immediately. This was in pursuance of the agreement with Carmichael and the title to the property under this agreement was just the same as though Carmichael had first taken actual possession and then delivered the machine to Root. The form of the transfer cannot change the legal effect of the agreement and understanding between Root and Carmichael.

Neither is it important, as far as the rights of respondent are concerned, that the bill of sale from King was made to Root instead of Carmichael as directed by the latter. Of course, King and Root could not defeat the rights of respondent by treating the property as though it belonged to Root. The bill of sale, it may be remarked, was not essential to the transfer but constituted evidence of the sale which probably could not be questioned by King or Root, but it did not affect the agreement between Root and respondent. If the latter had known of it the question of ratification or estoppel might possibly arise but no such situation is presented. Nor are we concerned with the consideration of a constructive trust and its repudiation by Root. The vital question is, who was the owner of the automobile at the time the chattel mortgage was executed, and this is to be determined by the terms of said agreement between Root and Carmichael.

The contention of an estoppel is equally untenable. It cannot be said that appellant was misled by any act or declaration of respondent. The latter had no conversation with the former about the ownership of the automobile nor did he have any knowledge, until long after, of the execution of the chattel mortgage. He did not know that Root had taken the bill of sale in his own name. In fact, there is no circumstance disclosed by the record that would make it inequitable for respondent to assert his title to the machine.

Neither can it be said that he is chargeable with negligence. He had the right to assume that Root was an honest man and that he would not violate his agreement. He could not be expected to anticipate that Root would execute a chattel mortgage upon property that the latter did not own.

Neither is it strange that he made no inquiry about the bill of sale. Root was working for him and it was confidently expected that the former would soon earn enough money out of his commissions to pay for the automobile, which he was using in the business.

Considering the testimony as we are required by the familiar rule, we can see no substantial reason for interfering with the conclusion of the trial judge.

We do not consider the cases upon which appellant relies as applicable to the facts here and deem unnecessary specific notice of them.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.