[Civ. No. 6175. First Appellate District, Division One.—February 21, 1928.]

VERA WALKLIN HEDGER, Appellant, v. H. J. HOGLE et al., Respondents.

D. P. Hatch for Appellant.

Waldo & Hinds, Waldo, Hinds & Lawrence and John H. Waldo for Respondents.

CAMPBELL, J., *pro tem.*—This is an appeal from a judgment in an action of claim and delivery of an automobile. The court found that the defendants were the owners of the automobile and entitled to retain possession and entered judgment accordingly. From this judgment plaintiff has appealed.

On November 8, 1924, appellant was the owner of the automobile in question given to her by her father, and it was then registered in her name as required by the Motor Vehicle Act (Stats. 1923, p. 517). On that date appellant and her father went to the salesroom of "National Motor Sales," under which name F. Koehl was conducting the business of selling used automobiles, and there delivered appellant's Packard automobile to the "National Motor Sales, F. Koehl, Proprietor," for $2,000, and $200 cash was paid on account of the purchase price, and the "National Motor Sales" was to sell the car and pay the balance due within ninety days. A promissory note of "National Motor Sales, Frank Koehl" for $2,000 was given to plaintiff dated November 8, 1924, due in ninety days, with interest at seven per cent per annum, stating in the body of the note "Value received for Packard Sedan No. 168100" and endorsed "Received by cash this day $200.00 Nov. 8, 1924, recd by Vera Walklin Hedger."

On the same day appellant delivered to "National Motor Sales, F. Koehl, Proprietor," her official pink "ownership

certificate'' issued to her by the state motor vehicle department and signed the same so as to permit the issuance of a new certificate to ''National Motor Sales'' as the registered owner. She also signed this certificate as the new legal owner. This signature was crossed out and an affidavit was filed with the motor vehicle department by Koehl with this certificate stating that this new legal owner signature of appellant was made by mistake. On the same day appellant made, signed and delivered a bill of sale of her automobile to National Motor Sales, F. Koehl, Proprietor, ''free and clear of all incumbrances except eighteen hundred dollars.''

It is appellant's contention that the sale by her of the automobile to ''National Motor Sales, F. Koehl, Proprietor,'' was a conditional sale and that the title was to remain in appellant until the purchase price was fully paid, and this contention is supported by her testimony and the testimony of her father. That such was her intention was found by the court, the court finding ''that plaintiff delivered the said pink ownership certificate so signed to the said F. Koehl for the purpose of having a new pink ownership certificate for said automobile issued to said 'National Motor Sales, F. Koehl, Proprietor,' as the new registered owner, and intending to have said certificate also show plaintiff as the new legal owner.''

The evidence is without material conflict. Appellant delivered her automobile to National Motor Sales, a business establishment engaged in the sale of used automobiles, and accepted a promissory note for $2,000, and received $200 in cash, which she receipted for on the back of the note. She gave a bill of sale to ''National Motor Sales, F. Koehl, Proprietor,'' which bill of sale was in the usual form, but contained the statement that the automobile was ''free of all incumbrances except $1800.00.'' Appellant produced to ''National Motor Sales, F. Koehl, proprietor,'' her official pink ownership certificate issued to her by the state motor vehicle department, on which she had signed her name in the place thereon provided for signature by the registered and legal owner, and she there signed the certificate on the reverse side on the first line designated as the line for the legal owner to sign in making a transfer, and wrote her address on the second line at the place there provided, and

also signed her name and wrote her address on the bottom two lines at the place there designated for the new legal owner, intending to retain the legal ownership of the automobile as found by the court—"that the plaintiff delivered the said pink ownership certificate so signed to said F. Koehl for the purpose of having a new pink ownership certificate for said automobile issued to said 'National Motor Sales, F. Koehl, proprietor,' as the new registered owner, and intending to have said certificate also show plaintiff as the new legal owner." On November 12, 1924, four days later, Koehl presented the pink certificate to the motor vehicle department with appellant's name as the new legal owner crossed out and the affidavit that appellant's name was written upon the pink certificate by mistake and secured a pink certificate of ownership issued to "National Motor Sales, F. Koehl, proprietor," as the registered and legal owner of the automobile, and in which no mention is made of appellant. On December 11, 1924, respondent H. J. Hogle purchased the automobile from "National Motor Sales, F. Koehl, proprietor," upon a conditional sales contract for $620 cash and note for $1,452.48. The note and conditional sales contract were sold to respondent D. B. Rose Inc., a corporation, for $1,180. Neither Hogle nor D. B. Rose Inc., had any knowledge or notice at the time of the purchase of any claim in the automobile by appellant. They had seen the pink ownership certificate issued by the motor vehicle department showing "National Motor Sales" as the registered and legal owner, believed National Motor Sales to be the true owner and had no reason to think otherwise; in fact, Koehl informed them that he owned the car.

It therefore appears from the evidence and findings that appellant desired to sell her automobile and left it at the salesrooms of National Motor Sales to be sold; that while she accepted a note for the amount stipulated as the selling price, she did not intend to part with the ownership or legal title until she received the purchase price; that in the bill of sale, which was in the usual printed form, she inserted "free and clear of incumbrances except eighteen hundred dollars"; that she signed the pink ownership certificate so that a new one might be issued, naming "National Motor Sales, F. Koehl, proprietor" as the new registered owner,

but naming herself as the legal owner, and, therefore, the one who would have to sign the certificate transferring title in the event of a sale by Koehl; that Koehl crossed out her name and presented the certificate, accompanied by a false affidavit, to the motor vehicle department and through fraud obtained a certificate showing National Motor Sales to be the legal owner as well as the registered owner.

Appellant in support of her contention that the sale was a conditional sale cites us to *Rodgers* v. *Bachman,* 109 Cal. 552, 555 [42 Pac. 448], holding: "The question is always one of intention, and whenever upon a proper construction of the instrument it is apparent that it was the intention of the parties thereto that the sale should be conditioned upon the payment of the price, it is the duty of the court to carry out that intention"; and also to *Greene* v. *Carmichael,* 24 Cal. App. 27 [140 Pac. 45], holding that conditional sales are fully recognized in this state; that one in possession under a contract of conditional sale cannot by selling or creating a lien on the property impair the rights or interests of the owner. Our attention is further directed to *Walsh* v. *Hunt,* 120 Cal. 46 [39 L. R. A. 697, 52 Pac. 115], in which case the agent altered a note and mortgage. There the court says: "It would be absurd to hold that there was upon the facts any implied or ostensible authority conferred upon him (the agent) to commit forgery—the plain legal effect of his act—and bind the defendant thereby; . . . that where it is through the instrumentality of a criminal act that the wrong is accomplished, it is the crime and not the negligent act which is the proximate cause of the injury; and in such case the maxim that where one of two innocent persons must suffer from the wrongful act of another, the loss must fall upon the one making the act possible, has no application."

We do not question the principle of law contended for by appellant, but here another principle is involved which is absent in the cases cited. Here appellant took her automobile to the place of business of National Motor Sales, F. Koehl, Proprietor, which was a place of business where the proprietor was ordinarily engaged in selling second-hand cars, to whom it was confided to sell.

While mere possession, it is true, even by one who happens to be a dealer in the same commodity or class of goods

is not sufficient evidence of ownership or of authority to protect one who purchases from the possessor (*Covill* v. *Hill*, 4 Denio (N. Y.), 323; *Linnen* v. *Cruger*, 40 Barb. (N. Y.) 633; *Pacific Acceptance Corp.* v. *Bank of Italy*, 59 Cal. App. 76 [209 Pac. 1024]), yet where, in addition to possession by the vendor, the owner has given such evidence of authority to sell as usually accompanies such authority according to the custom of trade or the general understanding of business men, the vendor's possession under such circumstances is evidence, not that he is the owner, but that he has received authority from the owner to sell (*Wright* v. *Solomon*, 19 Cal. 76 [79 Am. Dec. 196]; *Heath* v. *Stoddard*, 91 Me. 499 [40 Atl. 547]; *Pickering* v. *Bush*, 15 East (Eng.), 38). In *Pickering* v. *Bush, supra*, Lord Ellenborough uses this language: "If the principal send his commodity to a place where it is the ordinary business of the person to whom it is confided to sell, it must be intended that the commodity was sent thither for the purpose of sale. If the owner of a horse sent it to a repository of sale, can it be implied that he sent it thither for any other purpose than that of sale? Or if one send goods to an auction-room, can it be supposed that he sent them thither for safe custody? Where the commodity is sent in such a way and to such a place as to exhibit an apparent purpose of sale, the principal will be bound, and the purchaser safe."

The question presented here is quite similar in fact and analogous in principle to *Carter* v. *Rowley*, 59 Cal. App. 486 [211 Pac. 267], in which case the principle involved is fully discussed and the cases bearing upon the question distinguished. In that case the plaintiff drove his car to McNabb's place of business, exhibited it to McNabb and instructed the latter to try and find a purchaser; that if he found one to "bring him to me and I will sign the necessary license transfer and anything else necessary for the completion of the sale." Plaintiff's car, along with a number of other second-hand machines, was on exhibition for sale in McNabb's vacant lot. McNabb sold the car to the defendant, but did not claim to be the owner, and defendant knew the car was owned by plaintiff. Plaintiff never signed any statement or transfer indorsed on the certificate of registration. McNabb must have forged plaintiff's name to the transfer on the registration certificate as defendant re-

ceived through the mail a certificate of transfer from the state motor vehicle department. The court in that case says: "The principles governing the case are well stated by the supreme judicial court of Maine in *Heath* v. *Stoddard, supra:* 'A principal is not only bound by the acts of his agent, whether general or special, within the authority which he has actually given him, but he is also bound by his agent's acts within the apparent authority which the principal himself knowingly permits his agent to assume, or which he holds the agent out to the public as possessing (1 Am. & Eng. Ency. of Law, 2d ed., p. 969, and cases cited). Whether or not the principal is bound by the acts of his agent, when dealing with a third person who does not know the extent of his authority, depends not so much upon the actual authority given or intended to be given by the principal as upon the question, what did such third person, dealing with the agent, believe, and have a right to believe as to the agent's authority from the acts of the principal? (*Griggs* v. *Seldon*, 58 Vt. 561 [5 Atl. 504]; *Towle* v. *Leavitt*, 23 N. H. 360 [55 Am. Dec. 195]; *Walsh* v. *Hartford Ins. Co.*, 73 N. Y. 5.) For instance, if a person should send a commodity to a store or warehouse where it is the ordinary business to sell articles of the same nature, would not a jury be justified in coming to the conclusion that, at least, the owner had by his own act invested the person with whom the article was intrusted with an apparent authority which would protect an innocent purchaser?' . . . McNabb was more than a mere bailee; he was the plaintiff's agent to find a purchaser. Whatever may have been the private arrangement between plaintiff and McNabb, whatever the latter's *actual* authority may have been, plaintiff, by his own voluntary act, clothed McNabb with such *indicia* of authority to sell the car as usually accompanies such authority according to the custom of trade and the general understanding of business men."

In the present case, conceding the sale to be a conditional sale, the automobile was left with Koehl to be sold for appellant and was voluntarily placed by her in his salesroom, where he had second-hand cars for sale, and she thereby clothed him with such *indicia* of authority to sell the car as usually accompanies such authority according to

the custom of trade and the general understanding of business men.

In *Carter* v. *Rowley, supra,* the plaintiff did not sign the ownership certificate, but said to the proprietor of the second-hand car establishment: ''When you find a purchaser for this car who will pay me $575 net, you bring him to me and I will sign the license or anything else that is necessary for the completion of the sale of the car.'' The second-hand merchant sold the car and forged the name of the owner to the ownership certificate. Here the second-hand car merchant sold the car of appellant, crossed out her name as the new legal owner and filed a false affidavit that appellant's name as the new legal owner was written in the certificate by mistake. On principle the Carter case and the present case are analogous, and on the authority of that case, which we think states the correct rule, the judgment must be affirmed, and it is accordingly so ordered.

Tyler, P. J., and Knight, J., concurred.