*471 OPINION.
MoReis:
The issue .presented by the pleadings is whether the respondent erred in determining that a profit of $79,259.39 was realized by the petitioner during the year 1924 from the alleged sale of certain personalty and bus line operative rights upon the theory that the agreement of lease entered into by the petitioner, under which the property is alleged to have passed, was in fact an agreement of conditional sale.
The petitioner owned, and was engaged in operating, a bus line, which in November, 1922, he agreed to sell, together with his franchise, to the Pickwick Stages, for approximately $100,000. Prior to the consummation of said sale the Eailroad Commission of the State of California intimated that it would disapprove the transaction and consequently the agreement of sale was canceled. Another agreement was entered into, however, in February, 1923, entitled “Lease and Option Agreement,” which was finally approved by the said Eailroad Commission in March, 1924. The latter agreement, instead of providing for the outright sale of the properties, as did the former, let and demised the properties for a term of forty-seven months for a total rental of $109,900, payable $10,000 upon execution of the agreement, $20,000 after approval thereof by the Eailroad Commission and $1,700 monthly until fully paid, the petitioner to transfer to and vest in the lessee valid title to one of the twenty busses, purportedly leased thereby, upon the payment of each of said monthly instalments, and should the *472 lessee pay said rental and otherwise perform the covenants of the alleged lease, then, it was given the option of purchasing said properties for the sum of $1 cash, the petitioner to deliver proper documents of title thereto.
We can not hold that a relationship of lessor and lessee resulted from the foregoing transaction, merely because of the legal form employed and the words used therein, when it appears more dearly that the parties obviously intended, and by their various acts and deeds accomplished, a sale instead. From the point of view of the taxing statutes we are more concerned with the practical and real effect of the things done than with the chosen means of their accomplishment, and this is especially true where they are wholly inconsistent with each other. In determining what is taxable income “ substance rather than form is to be given controlling weight.” Eisner v. Macomber, 252 U. S. 189, and Bowers v. Kerbaugh-Empire Co., 271 U. S. 170. Any other rule would permit transactions otherwise taxable to escape taxation altogether merely through the proper choice of form and words.
What are the really substantial factors versus form? To begin with, one thing is clear and unmistakable and that is that the parties intended, and in fact attempted, to consummate an outright sale of these properties, but they were thwarted in their plans by the threatened disapproval of the Railroad Commission. That was their intention in November, 1922, as manifested by their acts, and although it is entirely possible that their intentions may have changed by the time the agreement of February, 1923, was consummated, there is not a scintilla of evidence in the record to that effect. Granted that their intentions did change, or more accurately stated, were changed, we are convinced that the changed intention ran only to the means and did not affect the ends sought, which were, to accomplish an outright sale. In fact there appears to have been very little deviation from their original plans. The consideration for the outright sale of the properties in the original agreement was “ approximately ” $100,-000, whereas the total consideration, called rental, provided for in the agreement here considered was $109,900. It is highly possible, of course, that the two sums were identical, but the witness only stated “ approximately ” and we are limited by the record as made. The petitioner testified at the hearing that the agreement which was actually carried out was practically the same in its terms as the first agreement, except as to the use of the word lease.
The petitioner directs attention to the option clause of the agreement and he cites the following tests of conditional sales from 17 b. R. A. 1422 in support of his contention that this was not a sale:
*473 With but few exceptions, the cases support the view that the essential elements of a conditional sale of personalty are a reservation of title in the seller, and an obligation upon the part of the buyer to accept and pay for the property in accordance with the terms of the contract, the title passing automatically upon the performance of that condition.
He does not contend, as he obviously could not consistently with his position, that he did not reserve the title in himself, but he doe,s contend that there was no obligation upon the part of the buyer to “ accept and pay for the property ” except that it may desire to so do. This part of the test naturally, and of necessity, presupposes that the property has not already been paid for. Here, when the option was finally alleged to have been exercised the property had been fully paid for, at least that ⅛ the practical effect of what was done since only the payment of a nominal sum of $1 was exacted and paid in order to acquire all of the property under the agreement. Respecting the remainder of the test, that is, the obligation to accept the property under the terms of the agreement, to even assume that Pickwick Stages would have failed to exercise its option and accept the property thereunder after having fully and completely paid therefor defies all natural reason and logic. Thus the option clause, in our opinion, was perfectly meaningless from a practical point of view and does not render the real state of affairs inconsistent with a conditional sale as laid down in the above test. The said option clause is rendered even more meaningless when we consider paragraph twenty-four of the agreement, which provides that “ The lessee shall have no right, power, or authority to assign, sell, or transfer this indenture, or any of the property or rights therein described to any person, natural or artificial, prior to the full payment of the term rental, without the written consent of the lessor, except, however, that it may sell such automobile busses as it may have obtained title to under this indenture.” The logical deduction to be drawn from this language is that while Pickwick Stages could not dispose of the properties prior to the full payment of $109,900, after such payment it could. Therefore, if it was necessary for that company to exercise its option to purchase, before it became the rightful owner of the properties thereunder, why should the aforesaid paragraph inferentially grant the power to dispose thereof upon payment of the entire so-called rental? Furthermore, Pickwick Stages had taken over the general properties of the line, such as depot equipment and garages, etc., had received an assignment of all subleases upon depots and had received title to all of the busses long prior to the actual exercise of the option clause, constituting all of the petitioner’s property with the exception of the franchise itself, so that, with the exception noted, no property *474 remained to be accepted under the option clause. Tested from every conceivable angle, the option clause appears to be nothing more than a provision to satisfy the State Commission.
It is well settled that “ an interest in the reversion is necessary to the relation of landlord and tenant,” Erving v. Goodman & Co. Bank, 171 Cal. 559; 153 Pac. 945. A reversionary clause, providing that the leased properties shall revert to the lessor at the end of the term, is commonly found in instruments where the relation of lessor and lessee is intended. There is not only no reversionary clause in the present agreement, but reversion, if such was ever intended, was rendered wholly improbable, except upon default, not only by the agreement itself but by the acts of the parties. For instance, it was agreed that if the lessee complied with the provisions of the lease the petitioner, upon termination thereof, would transfer the properties absolutely in consideration of the sum of $1. As we have already pointed out, it would be ridiculously illogical to assume that the option would not be exercised, thereby depriving the petitioner of any possibility of a reversion except, as just indicated, in case of default. Then, too, all of the properties except the franchise were transferred to Pickwick Stages within a short time after consummation of the agreement, so that there was nothing to revert.
We have carefully examined the authorities relied upon by the petitioner, but are unable to concede that they are controlling. In Harron, Rickard & McCone v. Wilson, Lyon & Co., 4 Cal. App. 488; 88 Pac. 512, the court said, “ ⅞ * * when it appears from the terms of the instrument that the intention of the parties was to make a sale of the property, courts will give such construction to the instrument irrespective of the name by which the parties have designated it.” See also Harron, Rickard & McCone v. Cutting, 19 Cal. App. 780; 127 Pac. 827; Rodgers v. Bachman, 109 Cal. 552; 42 Pac. 448; Van Allen v. Francis, 123 Cal. 474; 56 Pac. 339; Wellman v. Conroy, 194 Pac. 728; and Heryford v. Davis, 102 U. S. 235, specifically, or by necessary implication, holding that the intentions of the parties shall govern in determining whether a lease or a contract of sale resulted. See also Jefferson Gas Coal Co., 16 B. T. A. 1135, affirmed as to similar question here in controversy by the Circuit Court of Appeals for the Third Circuit, 52 Fed. (2d) 120.
Viewing the intentions of the parties, the ends which they obviously sought to accomplish and the practical things done, we are of the opinion that a sale was effected and that the respondent correctly so held.

Decision will be entered for the resfondent.