[L. A. No. 10932. In Bank.—December 31, 1931.]

AL DAUCH, Respondent, v. ELLA K. GINSBURG et al., Defendants; STANDARD MORTGAGE CORPORATION (a Corporation) et al., Appellants.

John M. Martin, Joe Crider, Jr., Frank L. Martin, Jr., and Clarence B. Runkle for Appellants.

O'Melveny, Tuller & Myers, Louis W. Meyers and William W. Clary, *Amici Curiae* on Behalf of Appellants.

Arthur V. Kaufman for Respondents.

Paul. J. Ziegler, *Amicus Curiae* on Behalf of Respondents.

THE COURT.—Plaintiff brought this action for the recovery of certain described personal property, or for the value thereof in case delivery could not be had, and for damages for its alleged wrongful detention. Defendants Ginsburg consented to a default judgment being entered against them. Defendants Standard Mortgage Corporation and Lincoln Investment Company defended the action. The cause was tried before the court without a jury, and resulted in a judgment in favor of the plaintiff for the return of the property or for the sum of $18,500, its reasonable value, if defendants could not make delivery. From this judgment the last two named defendants appeal.

The facts are practically undisputed. On February 26, 1926, the Ginsburgs borrowed from the defendant Standard Mortgage Corporation the sum of $58,000, giving as evidence thereof their promissory note secured by a deed of trust on certain described real property. It is conceded that this trust deed is second in point of priority to a trust deed securing an indebtedness of $175,000 owing to the Mortgage Guaranty Company of Los Angeles. This latter

company was not made a defendant in this action and its rights are not involved on this appeal. The trial court found that both loans were secured for the purpose of securing funds to construct a hotel building on the premises owned by the Ginsburgs. The loan of the defendant Standard Mortgage Corporation was a construction loan, the principal amount loaned to be advanced periodically as the work progressed. The trial court expressly found "that at the time of the negotiations for said building loan by defendant, Standard Mortgage Corporation, defendants Ella K. Ginsburg and Louis Ginsburg submitted to said defendant complete plans and specifications for the erection of said hotel building on said property, and as a part of said agreement for said building loan it was agreed by and between defendants . . . Ginsburg and defendant Standard Mortgage Corporation that the security for said building loan . . . should be said real property, together with said hotel building in its complete state after construction in accordance with said plans and specifications".

Subsequent to the execution and recordation of the above-mentioned note and trust deed, the defendants Ginsburg started construction of the hotel building contemplated by the above agreement. In connection therewith the Ginsburgs entered into a contract with the plaintiff whereby plaintiff agreed to furnish and install all of the plumbing and plumbing fixtures and all the heating equipment in the hotel. Pursuant to this agreement the plaintiff did install all of the rough plumbing in the building. Before installing the plumbing and heating fixtures, however, the plaintiff and the Ginsburgs canceled their agreement, and on November 24, 1926, entered into a new agreement in reference to those fixtures. By the terms of this new contract the Ginsburgs purchased from the plaintiff these fixtures upon what the parties designated a "lease contract", but what in legal effect is a conditional sales contract. By the terms of this contract title remained in the plaintiff, and plaintiff was specifically empowered to remove the articles from the building in the event of a default by the Ginsburgs. Plaintiff not only had in contemplation that these plumbing and heating fixtures were to become affixed to the real property, but actually affixed them himself. They were attached to

the rough plumbing by means of slip joint threaded unions and flanges, and were in some cases hung from brackets attached by screws to the wall or rested upon the floors. The bathtubs were set into the wall and a tile wall constructed to the rim of the tub. If these tubs be removed it would necessitate ripping out part of this tile wall.

The plaintiff started installation of these fixtures on November 24, 1926, and finished such installation in February, 1927. The evidence is uncontradicted, and the trial court found that the defendant Standard Mortgage Corporation had no knowledge of the conditional sales contract, and of the rights of plaintiff thereunder until approximately the date this action was brought in March, 1928.

After the hotel building was completed the Ginsburgs defaulted in their payments on the promissory note owing to the Standard Mortgage Corporation and likewise defaulted in the payments due plaintiff under his conditional sales contract. On November 10, 1927, the defendant mortgage corporation foreclosed its trust deed, and purchased the property at the foreclosure sale. On January 16, 1928, the Standard Mortgage Corporation leased the hotel for a period of fifteen years to the defendant Lincoln Investment Company. The lease of this company was not recorded.

The trial court held that the rights of the plaintiff as conditional vendor were superior to those of the Standard Mortgage Corporation as the holder of a prior trust deed. The trial court found that "said goods and chattels can be detached and removed from that certain real property known as the Mayan (Maryella) Hotel . . . without any damage or injury to such real property". Appellants assail this finding as being contrary to the evidence, and contend that the plumbing fixtures and heating equipment have become such an integral part of the hotel building that to remove them would be to substantially injure the security upon which they made the loan. There can be no doubt that these articles have become fixtures, within the meaning of section 660 of the Civil Code. That section provides: "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently

attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws; except that for the purposes of sale, emblements, industrial growing crops and things attached to or forming part of the land, which are agreed to be severed before sale or under the contract of sale, shall be treated as goods and be governed by the provisions of the title of this code regulating the sale of goods.'' The articles herein involved are indispensable for the use and operation of the hotel as a hotel. The plaintiff himself so testified and his attorney so stipulated.

Respondent argues that although the articles may have become fixtures as far as innocent third parties are concerned, that as against the Ginsburgs, and prior encumbrancers, the plumbing and heating fixtures retained their character of personal property by virtue of the conditional sales contract so providing. This argument is undoubtedly correct as far as the Ginsburgs are concerned. ■ The rule is well settled in this, as well as in other jurisdictions, that an agreement by the owner of land in favor of the owner of an article, to the effect that the article shall retain its personal character or be removable as personalty, even though affixed to the land, is valid and effective against the owner of the realty, and precludes him from contending that the article has become part of the realty by virtue of the fact that it has become affixed thereto. (*Oakland Sav. Bank* v. *California Pressed Brick Co.*, 183 Cal. 295 [191 Pac. 524]; *Watterson* v. *Cruse*, 179 Cal. 379 [176 Pac. 870]; *Hendy* v. *Dinkeroff*, 57 Cal. 3 [40 Am. Rep. 107]; *Kirkman Nurseries* v. *Sargent*, 42 Cal. App. 290 [183 Pac. 591]; see, also, 26 Cor. Jur. 676, sec. 39.) This rule is inferentially recognized by section 1013 of the Civil Code. It is equally well settled that such an agreement has no force and effect as against a subsequent purchaser or encumbrancer who becomes such without notice of the claims of the conditional vendor. (*Oakland Sav. Bank* v. *California Pressed Brick Co., supra; Bell* v. *Mortgage Guaranty Co.*, 109 Cal. App. 203 [292 Pac. 660].) This rule is based on the fact that the subsequent encumbrancer has been misled by the fact that the conditional vendor has permitted the chattels to become attached to the realty so as to have ostensibly become a part thereof.

■ In the present case the Standard Mortgage Corporation is in the position of a prior encumbrancer, who has advanced money to the owner of the real property for the purpose of having the latter construct a hotel building thereon. The parties contemplated that the security for the loan should not only be the real property, but also the completed hotel building. ■ Although no case seems to have been decided directly in point in this state, the rule is well settled elsewhere that usually the subsequent conditional vendor will prevail over a prior encumbrancer, for the reason that the prior encumbrancer has not been misled and has advanced nothing on the faith of such annexation. (26 Cor. Jur. 684, sec. 49.) Plaintiff herein seeks to bring himself within that rule. However, to that rule there is a well-recognized exception, and that is that it has no application where a severance of the fixtures will substantially injure or diminish the security of the prior encumbrancer. (26 Cor. Jur. 686, sec. 52, and cases cited therein.) That exception applies with particular force to the instant case. The plaintiff herein caused these articles to become attached to the real property. He knew that there was a prior encumbrance against the completed structure. He knew and so testified that the hotel could not be operated as a hotel if these fixtures were removed. He knew that the building was being erected for a hotel property and for no other use. He must be charged with notice of the fact that the removal of those fixtures would render practically worthless the main security for the loan. In such a case, it is our opinion that where the removal of the fixtures will substantially damage or injure the security of the prior encumbrancer, the conditional vendor's rights must be relegated to those of the former. ■ It is true that the trial court found that the articles herein could be removed without substantial damage to the realty, but that finding was not intended as a finding that the articles could be removed without substantial injury to the security of defendant. All that finding amounts to is a finding that the articles can be removed without injury to the basic structure to which they have been affixed. The plumbing and heating fixtures are permanent in character, and absolutely essential to the purpose for which the building was constructed. The

hotel building would not be a hotel building without those fixtures. If the above-mentioned finding means that the security of defendant mortgage corporation will not be substantially injured by virtue of the severance then the finding is contrary to the plaintiff's own testimony and contrary to the stipulation of the parties. Although involving a situation between the vendor and vendee of the realty, the reasoning of this court in *Fratt* v. *Whittier,* 58 Cal. 126 [41 Am. Rep. 251], seems applicable here. At page 131 it is stated: "Judged by these rules, it would seem as if there was no room for doubt as to the character of the articles in controversy. Taking into consideration their nature, the circumstances under which they were placed in the building, the mode of their connection with it, and the relation which they bear to its use and enjoyment, they must be regarded as essential for the purposes for which the building was used. The plaintiff himself, by his testimony, shows that the globes were lettered 'Orleans Hotel', and that they, with the chandeliers, etc., were necessary for furnishing light to the building; that the range rested on a foundation of brick, and that it and its attachments were annexed to the building by pipes, which connected them with the tanks and filters on the roof of the building, and by a waste pipe which ran through the wall of the building and connected with a sewer in an alley outside, and that the range and its attachments were necessary for cooking; that the tanks and filters were attached to the building by a system of pipes which connected them with the main, or pipes of the City Water Company, and with various parts of the hotel, and were necessary to supply the hotel with clear water; that the mosquito transoms and window-screens were fitted to the windows and transoms of the hotel—each window and transom-frame being fitted to its particular window, and shoved up and down in it on grooves, and all of them were as necessary to the hotel as its windows, its blinds and shutters. All of the articles were, therefore, essential to the use and enjoyment of the hotel; in fact, as the plaintiff testified, 'it would not have been a hotel without them'."

Inasmuch as we have determined that the case must be reversed for the above reason, it is unnecessary to discuss,

although they have been considered, the numerous other points raised by counsel.

The judgment appealed from is reversed.

Rehearing denied.