[Civ. No. 7465. Second Appellate District, Division One.—February 4, 1933.]

HAMMEL RADIATOR CORPORATION (a Corporation), Respondent, v. MORTGAGE GUARANTEE COMPANY (a Corporation), Appellant.

O'Melveny, Tuller & Myers, William W. Clary and Geo. H. Wood for Appellant.

Janeway, Beach & Hankey for Respondent.

CONREY, P. J.—In the year 1927, El Paula Holding Company, Inc., owner of a parcel of land in the city of Los Angeles, desired to build thereon an apartment house, which, with improved judgment, it named La Paula Apart-

ments. For that purpose it borrowed from Mortgage Guarantee Co. the sum of $250,000, to be advanced in specified installments as a building loan. A trust deed was executed to secure the loan, and the apartment house was constructed. The trust deed was duly recorded before the commencement of building operations. The plans and specifications submitted by the owner in applying for the loan specified gas steam radiators as the sole method for heating every apartment. The trust deed purported to cover said land with the appurtenances, including water, water rights, pipes and ditches, ''and all buildings and improvements thereon, or that may be placed thereon''.

During the progress of construction of the building the plaintiff, Hammel Radiator Corp., entered into a written contract with the owner for the sale, and installation in said La Paula apartments, of 125 gas steam radiators at the agreed price of $3,162, payable upon completion of installation. This contract was in the form commonly known as a conditional sales contract providing, among other things, that title to said radiators should remain in the plaintiff until full payment of the purchase price, etc., and that upon default of payment thereof the plaintiff might, at its option, enter upon said property and remove said radiators. The radiators were installed but the price was not paid. The installation was completed on or about February 8, 1928. At that time the defendant had advanced upon its construction loan a large part thereof, and the remainder thereof—approximately $48,000—was advanced and paid out to or for the benefit of the owner after the radiators had been installed, but not until after the apartments had been inspected by the Mortgage Guarantee Company's agent to see that the radiators had been installed, and that they were all in place and connected up.

Thereafter the owner defaulted in the matter of payments due from him to the Mortgage Guarantee Company, and in accordance with the power of sale vested by the trust deed the property was sold and conveyed to appellant. The plaintiff demanded permission to remove the radiators from the premises. Defendant refused, upon the ground the radiators had become attached to the realty in such manner as to become fixtures thereof, and as such fixtures became the

property of the defendant. Thereupon the plaintiff brought this action, seeking to recover damages as for conversion of the property by the defendant. Judgment was entered in favor of the plaintiff, and defendant appeals therefrom.

The principal questions of law presented by this appeal were discussed by the Supreme Court of California, in the recent case of *Dauch* v. *Ginsburg*, 214 Cal. 540 [6 Pac. (2d) 952]. In that case, as here, it became necessary to determine the matter of priority of rights as between the plaintiff, a vendor who had furnished and installed fixtures in a building, in the course of construction, and a prior encumbrancer who had advanced money to the owner for the purpose of having the building constructed. As a background for the particular question to be decided, the court observed that an agreement by the owner of land in favor of the owner of an article, to the effect that the article shall retain its personal character or be removable as personalty, even though affixed to the land, is valid and effective against the owner of the realty, and precludes him from contending that the article has become part of the realty by virtue of the fact that it has become affixed thereto; also, that such an agreement has no force and effect as against a subsequent purchaser or encumbrancer who becomes such without notice of the claims of the conditional vendor. Proceeding then to discuss the rights of one in the position of a prior encumbrancer who has advanced money to the owner of the real property for the purpose of having the latter construct a hotel building thereon, and when the parties contemplated that the security for the loan ''should not only be the real property, but also the completed hotel building'', the court said: ''Although no case seems to have been decided directly in point in this state, the rule is well settled elsewhere that usually the subsequent conditional vendor will prevail over a prior encumbrancer, for the reason that the prior encumbrancer has not been misled and has advanced nothing on the faith of such annexation. (26 Cor. Jur. 684, sec. 49.) Plaintiff herein seeks to bring himself within that rule. However, to that rule there is a well-recognized exception, and that is that it has no application where a severance of the fixtures will substantially injure or diminish the security of the prior encumbrancer. (26 Cor. Jur. 686, sec. 52, and

cases cited therein.)   That exception applies with particular force to the instant case.   The plaintiff herein caused these articles to become attached to the real property.   He knew that there was a prior encumbrance against the completed structure.   He knew and so testified that the hotel could not be operated as a hotel if these fixtures were removed.   He knew that the building was being erected for a hotel property and for no other use.   He must be charged with notice of the fact that the removal of those fixtures would render practically worthless the main security for the loan.   In such a case, it is our opinion that where the removal of the fixtures will substantially damage or injure the security of the prior encumbrancer, the conditional vendor's rights must be relegated to those of the former.   It is true that the trial court found that the articles herein could be removed without substantial damage to the realty, but that finding was not intended as a finding that the articles could be removed without substantial injury to the security of defendant.   All that finding amounts to is a finding that the articles can be removed without injury to the basic structure to which they have been affixed."

In the case at bar the record does not show that the plaintiff's representative testified that he knew that the apartment house could not be operated as an apartment house if the heating fixtures were removed.   But the plaintiff did itself attach the radiators to the real property, and had notice (constructive, by virtue of recording of the trust deed) that there was a prior encumbrance.   It was a necessary inference from what it knew about the building, and therefore it should be held to be known, that the apartment house could not be operated as an apartment house if the heating fixtures were removed.   Necessarily it knew the purpose for which the building was being erected.   Under these circumstances we think that the same rule as above stated must be applicable here, and that removal of the fixtures would substantially damage or injure the security of the prior encumbrancer, and it follows that the conditional vendor's rights must be relegated to those of the prior encumbrancer.   In *Dauch* v. *Ginsburg, supra,* the mode of attachment of the heating fixtures to the rough plumbing or pipes of the building was by means of slip joint threaded unions and

flanges, and were in some cases hung from brackets attached by screws to the wall or rested upon the floors. In the case at bar the attachment of the radiators to the pipes is also by threaded unions. In each case it is apparent that the heating fixtures or radiators could be removed without damage to the basic structure. It is true that in *Dauch* v. *Ginsburg, supra,* the subject of controversy included bathtubs which could not be removed without ripping out part of the tiled wall; but the court in its decision did not apply one rule to the bathtubs and another to the plumbing or heating fixtures. Counsel on each side of this case have been diligent in furnishing to the court citations and quotations from numerous cases dealing with controversies more or less akin to this present case; but we think it is not necessary to give them an extensive discussion here, since the principles involved, and their application to a case of this kind, appear to be settled by said decision in *Dauch* v. *Ginsburg, supra.*

In addition to the rights of appellant which it obtained by virtue of its prior recorded trust deed, we have the fact that appellant did not pay out the last $48,000 of its loan until after it had inspected the premises, and found that the heaters were installed and attached to the building in the manner which has been described. In *Dauch* v. *Ginsburg, supra,* at page 544, the court said, that an agreement by the owner of land in favor of the owner of an article, to the effect that the article shall retain its personal character or be removable as personalty, even though affixed to the land, "has no force and effect as against a subsequent purchaser or encumbrancer who becomes such without notice of the claims of the conditional vendor". That is the situation in the present case. It is true that appellant's inspector, who examined the premises before the final installment of the loan was paid out, admitted that he knew that heaters were sold by means of conditional sales contracts, and that the Hammel Radiator Corporation sold its heaters that way. But he also testified that he did not know that these particular radiators were sold in that way. This amounted to no more than an admission of a fact generally known that it is common practice, but not necessarily an exclusive practice, to use conditional sales contracts in sales of such property.

For the foregoing reasons we are of the opinion the trial court erred in its decision that the defendant converted to

its own use the said personal property, to the plaintiff's damage.

The judgment is reversed.

Houser, J., and York, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 3, 1933.