[L. A. No. 13745. In Bank.—February 21, 1935.]

BROADWAY IMPROVEMENT & INVESTMENT COMPANY (a Corporation), Plaintiff and Appellant, v. HARRY TUMANSKY et al., Defendants and Appellants.

Sherman & Sherman for Plaintiff and Appellant.

C. F. Seccombe, Huntington P. Bledsoe and Seccombe & Bledsoe for Defendants and Appellants.

THOMPSON, J.—Plaintiff and defendants have both appealed from portions of the judgment rendered in this action, the plaintiff being dissatisfied with that portion of the judgment which declared that the defendants were entitled to the immediate possession of 75 Pittsburg automatic gas steam radiators installed in an apartment house in Los Angeles, and the defendants contending that the portion of the judgment which enjoins them from removing a complete elevator system, a complete Frigidaire refrigeration system and 56 wall beds is erroneous. The defendants and appellants have abandoned their claims to the hot water heating plant and 48 sets of bathroom appliances. Both parties rely upon the judgment roll alone.

The findings of fact disclose that one Clyde S. Riedel was the owner of certain unimproved real property on March

24, 1927, at which time he borrowed from the American Mortgage Company $120,000, securing the payment of the notes given to evidence the loan by a deed of trust, it being the purpose of Riedel and the mortgage company that the loan so made should be used for the construction of an apartment house in accordance with plans and specifications theretofore prepared. Subsequent to the execution and recordation of the trust deed, a four-story brick apartment building containing 48 units was erected, but prior to the completion of the building, Clyde S. Riedel sold his interest in the property to J. J. Straus, who completed the building and equipped it. Straus installed the property here in controversy. The elevator system, the Frigidaire system and the wall beds were purchased upon conditional sales contracts but shortly thereafter the property so purchased was paid for in full by Straus or his successors in interest. After the building was completed and wholly equipped Straus sold the property to El Capitan, Inc., a corporation, which concern transferred title to William M. Hunt. On May 9, 1929, William M. Hunt executed to El Capitan, Inc., a promissory note in the sum of $47,500, payable in installments and secured by a second deed of trust. This second trust deed not only described the real property but also contained a description of certain furniture and furnishings, including the 48 wall beds and Frigidaire units. Hunt also executed a chattel mortgage containing a description of the furniture in the apartment house, including the 48 wall beds and Frigidaire units. No mention was made in the trust deed or in the chattel mortgage of the elevator system or of the gas steam radiators. Subsequently El Capitan, Inc., sold the trust deed and chattel mortgage to the defendants and appellants. Hunt defaulted in the payment of the promissory note secured by the second deed of trust and, upon foreclosure sale, the defendants became the purchasers and went into possession of the property, subject, however, to the deed of trust executed by Riedel on March 24, 1927. Hunt had also defaulted in payment of the note secured by this first trust deed, which, in the meantime, had been assigned to the plaintiff and, on June 6, 1931, plaintiff became the purchaser at trustee's sale under the first deed of trust.

■ Plaintiff claims the property upon the theory that it was affixed to and became a part of the realty and the defendants claim upon the contention that it did not become part of the realty. The court found, in addition to what we have already recited, that all of the property was installed by J. J. Straus with the intention "that said property should permanently remain in said building and be used in connection therewith and become an appurtenance thereto". With respect to the elevator system it was found that it ran from the basement to the roof of the apartment house on steel rails bolted to the walls of the apartment house, that the motor machinery and control units were bolted by means of heavy iron bolts to the floor of the pent house and that it is of great weight and cannot be removed except by means of mechanical instruments. With respect to the Frigidaire system the court found that it was controlled by two motor compressing units situated in the basement in an especially constructed room connected by means of union joints to the water supply of the building and connected to the electrical energy system of the apartment house by means of copper wires run through conduits and connected to the control board on the wall of the building by copper pipes attached by union joints, that the control board is attached to the building by means of bolts and heavy screws and that each distribution box is in turn connected by union joints to copper valves and pipes which run throughout the apartment house and that the system is a necessary appurtenance to the apartment building. With respect to the wall beds it was found that each bed consisted of a steel frame and necessary attachments whereby it was attached to the doors. With respect to the 75 gas steam radiators the court found that they were not attached to the floors, except that each radiator was connected by means of a "slip joint threaded union and flange" to a gas pipe in each room and the lobby and that they could not be removed except by unscrewing with a wrench.

As conclusions of law the court determined that the elevator system, the Frigidaire system and the wall beds were fixtures and covered by the first trust deed, but also held that the gas steam radiators were personal property and were not covered by the first trust deed.

We think that both appeals are determined and governed by the two cases of *Hammel R. Corp.* v. *Mortgage Guar. Co.,* 129 Cal. App. 468 [18 Pac. (2d) 993], and *Dauch* v. *Ginsburg,* 214 Cal. 540 [6 Pac. (2d) 952]. It is manifest that the findings of the court that the elevator system, Frigidaire system and wall beds were attached to the realty so as to become fixtures cannot, under the authorities cited, be disturbed. ▆ It is equally obvious that the finding with respect to the gas steam radiators is sufficient to compel us to declare that they were also attached to the building in such a way as to become fixtures and a part of the realty. In the case of *Dauch* v. *Ginsburg, supra,* the heating fixtures were "attached to the rough plumbing by means of slip joint threaded unions and flanges" and this court determined that they had become fixtures and that their removal would substantially damage and injure the property. It further said: "The plumbing and heating fixtures are permanent in character, and absolutely essential to the purpose for which the building was constructed. The hotel building would not be a hotel building without those fixtures." The same conclusion was reached in the other case, also involving gas steam radiators, and the trial court's judgment was reversed.

It follows that that portion of the judgment which declares that Harry Tumansky and Betty Tumansky, his wife, have no right, title or interest in or to the elevator system, the Frigidaire system, the water heating plant, 56 wall beds and 48 sets of bathroom appliances should be and it is affirmed. The second portion of the judgment, however, which declares that the defendants Harry Tumansky and Betty Tumansky, his wife, are entitled to the immediate possession of 75 Pittsburg automatic gas steam radiators, or in the event possession thereof cannot be had, then a judgment against plaintiff for the value in the sum of $1875, is reversed, with instructions to the trial court to enter judgment for the plaintiff for the 75 Pittsburg automatic gas steam radiators.

Shenk, J., Curtis, J., Preston, J., Langdon, J., Seawell, J., and Waste, C. J., concurred.