[Civ. No. 8762. Second Appellate District, Division One.—March 29, 1935.]

M. P. HANNIN et al., Respondents, v. FREDERICK FISHER et al., Appellants.

Bicksler, Parke & Catlin, G. W. Danielson and Lawrence M. Cahill for Appellants.

C. A. Stice for Respondents.

ROTH, J., *pro tem.*—On October 19, 1927, a mortgage in which appellant Western Loan & Building Company (hereinafter referred to as Loan Company) was mortgagee, and appellant Frederick Fisher, mortgagor, was recorded in the official records of Los Angeles County, to secure the payment of $60,000, a construction loan for the erection of an apartment house on the premises described in the mortgage.

On December 1, 1927, H. S. Jones & Co., plumbing contractors (plaintiffs' assignors) entered into a written contract with appellant Stratford Holding Company whereby it "agrees to furnish all labor and rough and finish materials necessary to install, in accordance with the specifications herein set forth, the plumbing system". The contract on its reverse side provided: "It is understood and agreed that in the event of the failure to pay any installment or installments on the contract price herein provided for, when due, then the Plumbing Contractor, at his option, which option shall continue during all the time of such default, may re-

move from the premises any materials or fixtures that shall or may have been installed therein by him or delivered by him to the premises, and may apply the value of such materials or fixtures so removed on account of any indebtedness due him on the contract. The option herein provided for shall be in addition to any and all other remedies the Plumbing Contractor may have to enforce his contract, either in law or equity.'' Pursuant thereto, the labor, rough and finish materials were rendered and furnished as provided for, and payments to a total of $3,880 were to be made as the work progressed. Of this amount $1320 was paid, leaving unpaid a balance of $2,560. It cannot be ascertained from the record whether Stratford Holding Company succeeded to Fisher's title to the property covered by the mortgage, nor can it be ascertained why, if this was not the fact, the contract was made with Stratford Holding Company.

On April 24, 1928, respondents brought this possessory action, demanding the return of ''All Soil Pipes, Lead Drain Pipes, Traps, L's and Sanitary tees, vent pipes and other fittings, water piping, and fittings, gas pipings and fittings, heat vents and all other materials pertaining to rough plumbing of the building''; and in the event delivery could not be made, damages for the said articles and for withholding the same. The claim for possession is predicated on the theory that the contract, under which the materials were furnished, was one of conditional sale, and the trial court so held.

The first question to determine is whether the trial court is correct in its judgment that the contract was one of conditional sale.

It will be conceded that the decisive distinction between a contract of sale and a contract of conditional sale is that in the latter, title to the thing sold is reserved in the vendor, while in the former, title passes to the vendee. (*McConnell* v. *Redd*, 86 Cal. App. 785, 789 [261 Pac. 506]; *Sheeley* v. *Holmes Music Co.*, 189 App. Div. 756 [179 N. Y. Supp. 202].)

It is thoroughly settled that the question whether a sale is conditional or absolute is one of intention as disclosed by the whole contract. (*Perkins* v. *Mettler*, 126 Cal. 100, 105 [58 Pac. 384]; *Greene* v. *Carmichael*, 24 Cal. App. 27, 30 [140 Pac. 45].)

In the case of *Palmer* v. *Howard*, 72 Cal. 293 [13 Pac. 858, 1 Am. St. Rep. 60], the court was called upon to construe an instrument which contained within its four corners language much more detailed and persuasive than does the one at bar. The court held the contract to be a mortgage, saying among other things: "In the present case it seems to us that the intention must be taken to have been to transfer the ownership of the property, reserving a security for the price, and nothing more. The possession was delivered. The promise to pay was absolute. (*Hart* v. *Barney & Co.*, 7 Fed. [543] 553.) If Palmer and Rey, on reselling the property, had sued the St. Clairs for the difference between the agreed price and what the property brought on the resale, we see no defense the latter could have made. Moreover, Palmer and Rey were *bound* to resell the property if they repossessed themselves of it. They could not have kept it as an owner; and not only so, but they were bound to resell for the benefit of the St. Clairs. The provision is, that if they retake they shall sell 'to the best advantage, *rendering to said borrower all surplus, if any, after paying the price agreed upon and the expenses of removal and sale.*' This is not a feature of an executory contract of sale. It is the chief characteristic of a mortgage, and is the very sum and substance of proceedings for foreclosure."

While it is true that later cases have held that the mere fact that a contract gives the right to a vendor to retake and sell for the credit of the vendee is not the decisive indication whether a contract is one of conditional sale or one of absolute sale, all the cases so deciding are with reference to situations in which title was reserved by the vendor, and in which the parties have provided for remedies other than and in addition to the remedy herein discussed. In the instant case, the sole ground upon which respondent predicates its claim that the contract is one of conditional sale, is the very remedy which the court in *Palmer* v. *Howard, supra,* proclaims as a primary distinguishing feature of a chattel mortgage from a conditional sale. Any other remedies which the vendor in the instant case might have would arise, not from a situation in which it has reserved title, but from one in which title has passed.

██ Under the laws of this state, an instrument, such as the one at bar, could create nothing more than a chattel

mortgage, valid as between the parties. (*Palmer* v. *Howard, supra.*) Lacking the formal requisites of a chattel mortgage as does the alleged conditional sales contract in this case, it would not be binding upon any third parties, and it becomes unimportant whether the rights of appellant Loan Company in relation to those of respondents be considered from the perspective of a prior or a subsequent encumbrancer. (*Dauch* v. *Ginsburg,* 214 Cal. 540, 544, 545 [6 Pac. (2d) 952].) ▆ The chattel mortgage is not binding upon the Loan Company in either event. Furthermore, it is well settled that the rule giving to a conditional vendor rights superior to a prior encumbrancer is subject to the "well-recognized exception . . . that it has no application where a severance of the fixture will substantially injure or diminish the security of the prior encumbrancer". (*Dauch* v. *Ginsburg, supra,* p. 545.)

In the instant case, the evidence shows that the plumbing was affixed by various methods, some by means of metal tape nailed to the studding; some was held in place by bridges that were screwed to the joists; some was cemented into place; some was buried underground, and some was buried right in the brick walls. It is not questioned that the plumbing was adapted to the use of the apartment house and that it constituted the complete gas, water and waste vent systems for the entire apartment house, and was a part of the fire protection equipment thereof, and that it was intended that the plumbing was to remain installed so long as the apartment house was to be used. It was to become and was in fact an essential and integral part of the building.

▆ Giving the clause excerpted from the plumbing contract the construction most favorable to respondents, it may be said that the parties to the contract agreed that the articles in question should retain their character of personalty irrespective of the manner of affixation. Since under such construction the contract creates a chattel mortgage good as between the parties, then as between the parties it is immaterial whether the plumbing in question became affixed to the land or actually retained its character as personalty. This rule is clearly stated in *Dauch* v. *Ginsburg, supra,* where it is said: "The rule is well settled in this, as well as in other injunctions, that an agreement by the owner of

land in favor of the owner of an article, to the effect that the article shall retain its personal character or be removable as personalty, even though affixed to the land, is valid and effective against the owner of the realty, and precludes him from contending that the article has become part of the realty by virtue of the fact that it has become affixed thereto.''

■ As between respondents and Loan Company the facts demonstrate that the articles in question were fixtures, and any finding of the trial court holding otherwise is not supported by the evidence. (*Broadway Improvement & Investment Co.* v. *Tumansky*, 2 Cal. (2d) 465 [41 Pac. (2d) 553].) The facts in the instant case and in *Dauch* v. *Ginsburg, supra,* are identical except that in the instant case the building was incomplete at the time demand was made and the articles in question could have been removed with less damage to the freehold than would have been the situation in the Dauch case.

As between respondents and Stratford Holding Company or Fisher, respondents had a right to the possession of the articles in question irrespective of the real or personal status of the articles, because the contract for their installation provided, in effect, that such articles should retain their personal character.

■ The difficulty, however, is that respondents had judgment against all three. Respondents are not in any event entitled to judgment against the Loan Company and they cannot be entitled to judgment against both Stratford Holding Company and Fisher, because *both* the principal and the agent cannot be held. The contract in question was signed Stratford Holding Company, ''Owner'', by Frederick Fisher, and the word ''Agent'' appeared immediately after the signature of Fisher. If, for any reason, the principal could not be held because of abuse of authority or because there was in fact no agency, then Fisher would be a proper party defendant, and a judgment,—assuming the proof of sufficient facts to warrant one,—would be proper against Fisher. But the very statement of such an hypothesis excludes the possibility of a judgment against Stratford Holding Company. So, if Fisher acted properly as agent and facts warranting a judgment against Stratford Holding

Company are proved, then a judgment would be proper against Stratford Holding Company, but certainly not as against Fisher. (*Ewing* v. *Hayward*, 50 Cal. App. 708, 717, 718 [195 Pac. 970].) In short, while it may be proper for respondents to sue both Stratford Holding Company and Fisher, it is necessary for respondents to elect at some time prior to judgment as to whom they are going to take judgment against. This was not done, and it is clear from what has been said that judgment cannot run against both. The trial court held that both Fisher and Stratford Holding Company were principals, but there is no evidence justifying such a finding. The execution clause of the contract indicates that Stratford Holding Company was principal and Fisher the agent.

The judgment must be, and it is reversed, as to all three defendants, and the cause remanded for a new trial. The appeal from the order denying the motion for a new trial is dismissed (sec. 963, Code Civ. Proc.); and the appeal from order denying the motion to set aside and vacate the judgment and enter a different judgment (since the record is devoid of any such order) is dismissed.

Conrey, P. J., and York, J., concurred.