[Civ. No. 8151. Fourth Dist., Div. One. Mar. 27, 1967.]

ROBERT J. ZINGHEIM, Plaintiff and Respondent, v. ROBERT S. MARSHALL et al., Defendants and Appellants.

[Civ. No. 8152. Fourth Dist., Div. One. Mar. 27, 1967.]

ROBERT J. ZINGHEIM, Plaintiff and Respondent, v. GORDON A. ROGERS, Defendant and Appellant.

(Consolidated Cases.)

Fizzolio & Fizzolio, Edward L. Lascher and James M. Fizzolio for Defendants and Appellants.

Kimball, Jones & Kelly and William M. McCarty for Plaintiff and Respondent.

WHELAN, J.—Appeals have been taken in two actions consolidated for trial; separate judgments were given based upon separate findings of fact. In both actions plaintiff recovered judgment: in action No. 275082 against Gordon A. Rogers (Rogers), and in action No. 262878 against Robert S. Marshall (Marshall) and Rogers. Both defendants have appealed.

### FACTS IN SUPPORT OF JUDGMENTS

Prior to November 24, 1958, plaintiff operated commercial radio broadcasting station XEMO in Tijuana, Mexico. The station was licensed under Mexican law to one Fernando Fer-

reira (Ferreira), a Mexican national. Under Mexican law, only a Mexican national of native birth or a Mexican corporation whose shares have been issued only to Mexican nationals may hold such a license.

At the same time plaintiff operated an agency with a San Diego office for the sale of advertising time on XEMO.

On October 20, 1958, plaintiff gave a 30-day option to Rogers and four other persons not party to the present litigation to purchase the agency and the physical equipment of XEMO.

Before the expiration of the option period, Rogers communicated with plaintiff not for the purpose of exercising the option but to arrange to purchase the agency and XEMO for himself.

A written agreement was prepared by plaintiff's attorney by which plaintiff agreed to sell the agency, all accounts receivable and XEMO to Marshall, who was acting for Rogers, who did not wish his name to appear in the agreement. Originally the agreement was dated November 20, but that date was changed to November 24, on which date it was signed. Rogers said he did not wish the date of November 20, because it was too close to the option expiration date.

The agreement contained the following provisions: "Radio Station XEMO in Tijuana, Baja California, Republic of Mexico, is presently in the name of Fernando Federico Ferreira, and shall be transferred to such person of Mexican nationality or such Mexican Corporation as Robert S. Marshall shall designate.

". . . . . . . . . . . . .

"The parties agree that the Superior Court of the State of California shall be the sole and exclusive forum for the trial of any issues or matters or causes of action which may arise to any party hereto because of this contract. However, if any part of this agreement is contrary to the laws of the Republic of Mexico, then such part is void and of no effect, but the balance of this contract is to remain in full force and effect."

Following the signatures of plaintiff and Marshall was the written guaranty of Rogers to pay the purchase price of $40,000 in the manner provided.

On a separate sheet was an agreement signed by Ferreira which reads as follows: "For VALUE RECEIVED, I hereby agree to be bound by the terms of the contract dated November 24, 1958, between Robert J. Zingheim and Robert S. Marshall, and further agree to transfer the license for Radio Station

XEMO in Tijuana, Baja California, Republic of Mexico to such person of Mexican nationality or such Mexican Corporation as Robert S. Marshall shall designate.''

All the persons named were present at the time of signing. Everyone knew that Rogers was the real party in interest in the purchase. Rogers had been informed by plaintiff and knew from other sources that Mexican law required that the licensee be a Mexican national or a Mexican corporation.

Subsequently Rogers went with Ferreira to Mexico City to have a Mexican corporation formed to which the license might be transferred; there Rogers was advised to have the corporation formed in Tijuana to avoid the necessity of holding the meetings in Mexico City. Rogers and Ferreira returned without having had the license transferred. Thereafter Rogers did not designate to Ferreira, during the latter's lifetime, anyone to whom Rogers wished the license to be transferred.

In 1959 a California corporation had been formed, known as Radio 860, Inc., to which the agency, accounts receivable and physical assets of XEMO were transferred.

The buildings housing XEMO were destroyed by fire on April 1, 1960. Previously Rogers had purchased land in Mexico for relocating the station, which land he placed in the name of Ferreira.

Following the fire of April 1, 1960, XEMO went off the air about February 1961. It resumed operation at the new location on September 2, 1961. It was necessary that it resume operation to keep the license alive. With the exception of one transmitter purchased by Rogers, practically the entire cost of the new building and equipment was borne by Ferreira with borrowed money. Rogers refused the opportunity of taking over the operation upon the condition of paying those costs.

Ferreira died March 23, 1964.

On June 30, 1964, Rogers' attorney made demand on Ferreira's attorney that the license be transferred to a certain nominee.

Rogers never demanded of plaintiff that the license be transferred.

Rogers made his last payment to plaintiff on account of the purchase price on November 17, 1960.

The contract of November 24, 1958, provided that the purchase price of $40,000 be paid in monthly installments of not less than $300 with a provision for a larger payment when net billings for advertising sold in the previous month exceeded a

certain amount. There was a provision for acceleration in the event of default.

Before an actual delinquency occurred, plaintiff filed action No. 240878 in the superior court for the entire balance, upon the theory that monthly payments of more than $300 should have been but were not made. Marshall was the only named defendant.

Marshall answered and cross-complained through counsel furnished by Rogers. The cross-complaint sought rescission and recovery of the amounts paid based upon claims of fraud and misrepresentation and of the illegality of the contract. There were other counts seeking damages.

Rogers testified as a witness in defense of the action and in support of the cross-complaint.

The trial court, in findings dated December 9, 1961, found that there had not been a default before the action commenced; because 12 payments had become due up to the date of the judgment, judgment was given for those amounts totaling $3,600; plaintiff was denied any attorney's fees under the contract; the allegations of the cross-complaint as to fraud and illegality were found to be untrue. The following conclusions also were made: ''IV That no default can be declared for purposes of declaring the balance of the remaining payments due immediately where the default occurs during the process of litigation to determine whether such a default existed. The right of action must exist at the time that action is commenced.

''V That nothing in this judgment should be construed as an adjudication of the duty of the plaintiff to bring about a transfer of the license and radio station in Mexico from Fernando Federico Ferriera [sic] to the defendant, and that the findings in this action are without prejudice to the determination in a future action as to that duty.''

Judgment was entered accordingly against Marshall. No part of that judgment had been paid up to the time of trial of the present action.

### THE PRESENT ACTIONS

The present actions were filed in March 1962. Action No. 262878 was commenced against Marshall and Rogers to recover the unpaid balance of the purchase price. The complaint alleged that the November 24, 1958, contract was entered into by Rogers through Marshall as his agent; it alleged the filing of action No. 240878 and the findings therein with regard to the legality of the contract and the judgment rendered.

Action No. 275082 was commenced in the municipal court against Rogers, seeking to recover the amount of the judgment that had been rendered in action No. 240878 against Marshall, based upon Rogers' agreement to guarantee the payments by Marshall. Rogers cross-complained for a sum in excess of $50,000 and the case was transferred to the superior court.

It was stipulated that defendant Rogers supplied the counsel in action No. 240878 and had a proprietary interest in the outcome, and that on the date of execution of the November 24 agreement Marshall was acting as the agent of Rogers. Based upon this stipulation, the court held that the findings of fact, conclusions of law and judgment in action No. 240878 were res judicata as to defendants in the cases at bench and that evidence intended to show the illegality of the November 24 contract was, therefore, inadmissible.

The court issued findings stating that: Rogers, for valuable consideration, contracted to guarantee the payments by Marshall; Rogers had actual notice of action No. 240878 and was sworn as a witness therein; Rogers supplied counsel in action No. 240878 to Marshall and controlled the litigation thereof; in the November 24 contract, Marshall agreed to transfer the license; plaintiff, under that contract, was not obligated to obtain a transfer of the license; plaintiff has performed all the covenants under the agreement; there has been no failure of consideration or occurrence of conditions affecting the obligation; Rogers' performance was not conditioned on the procurement of transfer of the license by plaintiff; and Rogers' guaranty was given for a valuable consideration. Based upon these findings, the court concluded that Marshall was acting within the scope of his employment when he executed the contract; further, that Rogers is bound by the findings of fact, conclusions of law and judgment in action No. 240878.

The court entered judgment in the amount of $3,600 against Rogers, and a judgment in the amount of $29,689.04, for the unpaid balance of the purchase price, against Rogers and Marshall and attorney's fees under the provision of the contract relating to fees in an amount of $9,896.

### DEFENDANTS' CONTENTIONS

The contentions made by defendants, set forth at some length under several headings and sub-headings, may be summarized as follows:

 Plaintiff, having pursued action No. 240878 to judg-

ment, exhausted his remedies; his attempt to recover on the same contract in the present action is an attempt to split his cause of action.

The findings and judgment in action No. 240878 are not binding upon Rogers, who was not a party to that action; his interest in the subject matter and outcome of the action and participation in the defense do not permit the findings and judgment to be res judicata as to him; he may, therefore, assert the illegality of the November 24 contract under Mexican law and his other defenses; and Marshall also may assert the illegality of the contract.

The contract was not only illegal but void; that it was conditional upon a transfer to the nominee of Marshall of the license issued by the Mexican Government; that it was plaintiff's obligation under the contract to obtain the transfer of the license by Ferreira to Marshall's nominee; and plaintiffs failure to effect such transfer, constituted a failure of consideration.

A judgment against both Rogers, the principal, and Marshall, his agent, was error; that a judgment against only one would have been proper; that since plaintiff had pursued action No. 240878 to judgment against Marshall alone, plaintiff thereby elected to hold Marshall as the responsible party and could not, therefore, hold Rogers.

That the award of attorney's fees as to the amount was arbitrary and excessive.

WAS THERE A SPLITTING OF PLAINTIFF'S CAUSE OF ACTION?

No.

DID THE CONTRACT MERGE INTO THE JUDGMENT IN ACTION No. 240878?

No.

WAS THE OBTAINING OF THE JUDGMENT IN ACTION No. 240878 A BAR TO THE PRESENT ACTION ON THE NOVEMBER 24 CONTRACT?

No.

Section 1047, Code of Civil Procedure, provides: "Successive actions may be maintained upon the same contract or transaction, whenever, after the former action, a new cause of action arises therefrom."

It was conclusively adjudicated in the former action, No. 240878, that there was no delinquency under the contract at the time that action was commenced that permitted plaintiff to declare the entire unpaid balance due; and that plaintiff

might recover only the accrued monthly payments; that he had no right to declare the entire unpaid balance due because of nonpayment during the pendency of the action of installments that became due in that period. No appeal was taken from that judgment.

No cause of action for subsequently accruing payments arose prior to judgment in that action, No. 240878. Recovery of such installments cannot be barred by the judgment in that action. (*Reuter* v. *Pacific Mut. Life Ins. Co.*, 5 Cal.App.2d 333, 336-337 [43 P.2d 576].)

WERE THE FINDINGS AND JUDGMENT IN ACTION No. 240878 BINDING UPON ROGERS?

Yes. It is unquestioned that in executing the contract Marshall acted for a disclosed principal, Rogers, who from that time on claimed to be owner of the radio station; that Rogers knew of the commencement of the action, furnished counsel to defend it, appeared as a witness at the trial of the action, was interested in the outcome not only by reason of his interest in the subject matter but also because he had given a written guaranty of performance of the November 24 contract; the cross-complaint sought to recover the amount paid under the contract which, according to the testimony of Rogers, had been paid by him.

The evidence is ample that in defending the action Marshall was acting on behalf of Rogers as well as himself; that their interests were not adverse one to another. The situation, therefore, is wholly unlike that in which recovery is had in an action against an agent based upon his conduct in the course of the agency, and in which res judicata is sought to be applied later against the principal solely upon the ground that the actionable conduct was that of the principal's agent, and that, therefore, the principal is bound by the judgment against the agent. "A person who is not a party to an action but who controls the action is bound by the judgment where he has a proprietary or financial interest in the judgment or in the determination of a question of fact or law with reference to the same subject matter or transaction." (*Stafford* v. *Russell*, 117 Cal.App.2d 319, 320 [255 P.2d 872].)

In certain circumstances, a nonparty principal will be held bound by a judgment against his agent under the doctrine of res judicata. (*Shamlian* v. *Wells*, 197 Cal. 716 [242 P. 483]; *Nisbet* v. *Rhinehart*, 2 Cal.2d 477, 484-485 [42 P.2d 71].)

A principal under certain circumstances owes a duty to indemnify an agent. "Unless otherwise agreed, the principal

is subject to a duty to an agent, not barred by the illegality of his conduct, to reimburse him for or to exonerate him from:

"(b) payments upon contracts upon which the agent is authorized to make himself liable . . ." (Rest., Agency, § 439, p. 1018.)

Nothing in the evidence suggests that Marshall, under this rule, would not be entitled to reimbursement for the amount of the judgment in action No. 240878 if Marshall had paid it. " '[W]here one is bound to protect another from liability he is bound by the result of a litigation to which such other was a party, provided he had notice of the litigation and opportunity to control and manage it, the rule being subject to the qualification that the litigation must have been carried on without fraud or collusion, and conducted in a reasonable manner.' " (*Sawyer* v. *Sunset Mutual Life Ins. Co.*, 8 Cal.2d 492, 500 [66 P.2d 641].)

We conclude that the court's application of the doctrine of res judicata was proper.

■ WAS THE LEGALITY AND ENFORCEABILITY OF THE NOVEMBER 24 CONTRACT ADJUDICATED IN ACTION No. 240878?

Yes.

The doctrine of res judicata applies to issues of law as well as of fact. (*Delpit* v. *U.S. Shipping Board E. F. Corp.*, 115 Cal.App. 85, 86 [300 P. 990]; *Barrett* v. *Superior Court*, 104 Cal.App. 657 [286 P. 443].)

In that respect there is no distinction between local law and the laws of a foreign country of which the trial court in action No. 240878 was entitled to take judicial notice (former Code Civ. Proc. § 1875, subd. (4)).

In their brief on appeal, defendants have presented the opinion of a scholar learned in the laws of Mexico that the purchase of all the rights, title and interest, or a part thereof, by an American citizen of a Mexican commercial radio station was not legal under the Mexican law as it was in force in November 1958.

This court takes judicial notice of the fact that Mexican law also forbids the ownership by a non-Mexican national of land within certain distances from the land or maritime borders of that country; also that in practice Mexican law has permitted title to land within the prohibited zone to be held by a Mexican trustee in trust for the benefit of a non-Mexican national for limited periods of time.

We mention the last point not with any pretense of making a redetermination of whether the November 24 contract was

legal under Mexican law, but rather to suggest the possibility that the trial court in action No. 240878 may have taken judicial notice or had other evidence of such permitted practices.

█ Was it Plaintiff's Obligation to Obtain the Transfer of the License from Ferreira to Another Mexican National?

The trial court found that plaintiff did not have that obligation, and that the language of the November 24 contract imported that Marshall had agreed to effect such transfer.

The language of the contract did not in explicit terms declare that either party so agreed. The language is quite consistent with the theory that it was meant to make it clear that Ferreira would not have the right to retain the license in his name against the wishes of Marshall.

We think the evidence, including the finding in action No. 240878 that no such transfer had been requested up to that time, is clear that Rogers and Marshall had been satisfied to retain Ferreira as the licensee; that they accepted him as their appointee in that regard; that thereby they waived any right to rely upon plaintiff as the person responsible to see that the transfer was made. We so find.

█ In Pursuing Action No.240878 to Judgment Against Marshall Only, Did Plaintiff Elect Not to Look to Rogers as Principal?

No. The authorities upon which defendants rely are of two classes: they deal either with a nondisclosed principal (*Craig v. Buckley*, 218 Cal. 78, 81 [21 P.2d 430]; *McEwen v. Taylor*, 106 Cal.App.2d 25, 29-30 [234 P.2d 754]; *Standard Oil Co. of Cal. v. Doneux*, 192 Cal.App.2d 608, 613 [13 Cal.Rptr. 749]; *J. M. Wildman Inc. v. Stults.* 176 Cal.App.2d 670, 675 [1 Cal.Rptr. 651]; *Grosso v. Monfalcone, Inc.*, 13 Cal.App.2d 405, 409 [56 P.2d 1266]; *Klinger v. Modesto Fruit Co., Inc.*, 107 Cal.App. 97, 100 [290 P. 127]; *Ewing v. Hayward,* 50 Cal.App. 708, 718 [195 P. 970]), or with a contract that on its face showed that the agent was acting as such (*Hannin v. Fisher,* 5 Cal.App.2d 673, 678-679 [43 P.2d 815]).

Rogers was a disclosed principal. "If, at the time of a transaction conducted by an agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity, the principal is disclosed." (Rest.2d Agency, § 4(1), p. 17.)

In the present case, therefore, the following principles govern: █ "A disclosed or partially disclosed principal is subject to liability upon an authorized contract in writing, if

not negotiable or sealed, although it purports to be the contract of the agent, unless the principal is excluded as a party by the terms of the instrument or by the agreement of the parties.'' (Rest.2d Agency, § 149, p. 365.) (*Bank of America* v. *Cryer*, 6 Cal.2d 485, 488 [58 P.2d 643].) ▮▮▮ ''Recovery of judgment against the agent of a disclosed or partially disclosed principal for failure of performance of a contract to which the agent is a party does not thereby discharge the principal. . . .

Comment: . . . c. . . . If the agent becomes a party to the transaction, ordinarily he becomes a surety for the principal. . . . If the agent is separately liable, the other party has two separate causes of action although based upon the same claim, and only the satisfaction of a judgment against the agent terminates the liability of the principal.'' (Rest.2d Agency, § 184, pp. 417-418.)

▮▮▮ In the present action, further, the claims that an election must be made and had been made, asserted on appeal, were not made in the trial court. Therefore, they have been waived. (*Craig* v. *Buckley, supra,* 218 Cal. 78, 82.)

▮▮▮ WAS THE AWARD OF ATTORNEY'S FEES AS TO THE AMOUNT ARBITRARY AND EXCESSIVE?

The November 24 contract provided: ''Should an attorney be employed to enforce the payment of the sums of money due under the terms of this agreement, then Robert S. Marshall agrees to pay Robert J. Zingheim a reasonable attorney's fees.''

The transcript of the oral proceedings discloses that in arriving at the amount of attorney's fees, the court considered one-third of the principal amount as a reasonable fee; if that percentage were the sole criterion employed, we should be obliged to say that the method was arbitrary. However, the court made it clear that the award of fees was based upon the amount of work that had been done by plaintiff's counsel.

It is argued by defendants and admitted by plaintiff in the briefs on appeal that the award covered also services rendered in action No. 240878, in which attorney's fees had been refused by the court. Counsel for plaintiff justify the court's action upon the ground that the services performed in action No. 240878 made it possible to raise the bar of res judicata to most of the issues in the present case, thereby shortening the trial. But one of the matters adjudicated in action No. 240878 was that plaintiff was not entitled to attorney's fees in connection with that action. Counsel for plaintiff mention also

that the actions on appeal are "numbers 6 and 7 of a series of seven actions in which counsel or their predecessors (whose fee is to be paid from this 'excessive' award) . . . has variously acted on behalf of respondent."; that it "was apparently the case here" that fees were awarded "in connection with other proceedings . . ."

In fixing attorney's fees in an action on a contract providing for such fees, it is error to make an allowance for attorney's services rendered in an earlier action on the same contract between the same parties in which attorney's fees were refused by the trial court in a judgment that has become final.

 Because of that error, that part of the judgment fixing the amount of fees cannot stand unless it should appear as a matter of law that the award is not excessive. The arguments of counsel in which plaintiff's counsel presumably described the services performed were not reported. Of the matters considered by the court, therefore, we have before us only the court files in the two consolidated actions, the transcripts on appeal, and the fact that the allowance improperly included compensation for services rendered in action No. 240878. The court file in that action shows that the action was tried twice; the first trial was concluded in one day and was followed by a strongly urged and contested motion for new trial; the second trial extended over four days; there were two pretrial hearings and statements, several amendments to pleadings, and extensive briefs. Apparently the award may have covered services rendered in other actions.

As to one of those other actions, Ferreira's deposition, which was used in the trial of the case at bench, was taken. For services rendered by plaintiff's counsel in the taking of that deposition, an allowance would have been proper.

The present action was tried over a period of three days; there was an additional appearance for the court's oral decision. There was a certain amount of briefing done, the necessary paper work and trial preparation, pre-trial appearance, etc. On the face of it, the fee allowed was clearly excessive for the services performed in connection with the two consolidated actions now on appeal.

Plaintiff is entitled to recover for attorney's fees reasonably incurred in connection with the appeal. (*Automatic Vending Co.* v. *Wisdom,* 182 Cal.App.2d 354, 359 [6 Cal.Rptr. 31].) We fix that amount at $1,500.

The judgment is affirmed, except as to the amount of attorney's fees awarded below. As to that element, the judgment is

reversed with directions to the trial court to fix the amount of attorney's fees, based upon services reasonably necessary in connection with the two consolidated actions in the trial court, excluding all services rendered in action No. 240878 and in any other action not brought to enforce payment under the contract except for possible services in connection with the obtaining of Ferreira's deposition.

In addition to $1,500 attorney's fees on appeal, plaintiff shall recover 75 percent of his costs on appeal. Defendants shall not recover costs on appeal.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 24, 1967.